

FILED
2023 Mar-09  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

AGRO HOLDINGS LLC, ALAMEDA  )
AGGREGATES LLC, AQUATIC  )
CREEK LLC, ARDEN ROW ASSETS  )
LLC, ASH RESOURCES LLC,  )
AVALON RESOURCES LLC, BAMA  )
SOIL LLC, BARN CREEK LLC,  )    CIVIL ACTION NO.:
BASSWOOD AGGREGATES LLC,  )
BEGONIA RESOURCES LLC,  )
CANARY AGGREGATES LLC,  )
CEDAR PLACE RESOURCES LLC,  )
CENTERLAND HOLDINGS LLC,  )
CHERRY ROCK RESOURCES LLC,  )
CRIMSON S&G LLC, DEER VALLEY )
RESOURCES LLC, DELWOOD  )
RESOURCES LLC, DRY CREEK  )
RESOURCES LLC, DYNAMITE  )
CREEK LLC, EDGE ROCK LLC,  )
FALLING ROCK LLC, FIELD VIEW  )
LLC, FORSYTHIA HOLDINGS LLC,  )
GARDENIA AGGREGATES LLC,  )
GIANT AGGREGATES LLC,  )
GREENVIEW AGGREGATES LLC,  )
HALLO RESOURCES LLC, HARD  )
ROCK HOLDINGS LLC, HARROW  )
AGGREGATES LLC, HEMATITE  )
AGGREGATES LLC, HILLSIDE  )
VIEW LLC, IGNEOUS ROCK LLC,  )
INSHORE AGGREGATES LLC, IRIS  )
HOLDINGS LLC, JC AGGREGATES  )
LLC, JET ROCK HOLDINGS LLC, KC)
AGGREGATES LLC, LITTLE RIVER  )
MINERALS LLC, LOW ANGLE  )
AGGREGATES LLC, LOWLAND  )
CREEK LLC, MAGNOLIA RIVER  )
MINERALS LLC, MATTOCK  )

HOLDINGS LLC, MIDWAY )
HOLDINGS LLC, NATURAL )
AGGREGATES LLC, NATURE )
POINT AGGREGATES LLC, NORTH )
WALL HOLDINGS LLC, OAK )
BAYOU HOLDINGS LLC, OPEN )
AGGREGATES LLC, PALMETTO )
AGGREGATES LLC, QUAIL ROCK )
AGGREGATES LLC, QUORUM )
HOLDINGS LLC, RIDDLE )
AGGREGATES LLC, RIM ROCK )
HOLDINGS LLC, SPADE ROCK LLC, )
STERLING LAND MINERALS LLC, )
THRESHING STONE LLC, TOP ROPE )
HOLDINGS LLC, UNIQUE )
RESOURCES LLC, UPLAND CREEK )
LLC, YARD ROCK HOLDINGS LLC, )
YIELD ROCK RESOURCES LLC, ZIP )
ROCK HOLDINGS LLC, )
CONSERVATION SAVES LLC, )
ECOVENTURES LLC, GALT )
HOLDINGS LLC, GALT MINING )
INVESTMENTS LLC, GH MANAGER )
LLC, LONGLEAF VENTURES LLC, )
NATURAL AGGREGATES )
PARTNERS LLC, ORNSTEIN- )
SCHULER LLC, ORNSTEIN- )
SCHULER INVESTMENTS LLC, )
PARTNERSHIP REPRESENTATIVE )
MANAGEMENT LLC, )
SOUTHEASTERN MINING )
INVESTMENTS LLC, THE )
ORNSTEIN-SCHULER GROUP LLC )
AND YELLOWHAMMER )
VENTURES LLC )

      Plaintiffs,

v.

UNITED STATES OF AMERICA, U.S.
DEPARTMENT OF THE TREASURY
AND INTERNAL REVENUE
SERVICE

　　　　Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Agro Holdings LLC, Alameda Aggregates LLC, Aquatic Creek LLC, Arden Row Assets LLC, Ash Resources LLC, Avalon Resources LLC, Bama Soil LLC, Barn Creek LLC, Basswood Aggregates LLC, Begonia Resources LLC, Canary Aggregates LLC, Cedar Place Resources LLC, Centerland Holdings LLC, Cherry Rock Resources LLC, Crimson S&G LLC, Deer Valley Resources LLC, Delwood Resources LLC, Dry Creek Resources LLC, Dynamite Creek LLC, Edge Rock LLC, Falling Rock LLC, Field View LLC, Forsythia Holdings LLC, Gardenia Aggregates LLC, Giant Aggregates LLC, Greenview Aggregates LLC, Hallo Resources LLC, Hard Rock Holdings LLC, Harrow Aggregates LLC, Hematite Aggregates LLC, Hillside View LLC, Igneous Rock LLC, Inshore Aggregates LLC, Iris Holdings LLC, JC Aggregates LLC, Jet Rock Holdings LLC, KC Aggregates LLC, Little River Minerals LLC, Low Angle Aggregates LLC, Lowland Creek LLC, Magnolia River Minerals LLC, Mattock Holdings LLC, Midway Holdings LLC, Natural Aggregates LLC, Nature Point Aggregates LLC, North Wall

Holdings LLC, Oak Bayou Holdings, LLC, Open Aggregates LLC, Palmetto Aggregates LLC, Quail Rock Aggregates LLC, Quorum Holdings LLC, Riddle Aggregates LLC, Rim Rock Holdings LLC, Spade Rock LLC, Sterling Land Minerals LLC, Threshing Stone LLC, Top Rope Holdings LLC, Unique Resources LLC, Upland Creek LLC, Yard Rock Holdings LLC, Yield Rock Resources LLC, Zip Rock Holdings LLC, Conservation Saves LLC, Ecoventures LLC, Galt Holdings LLC, Galt Mining Investments LLC, GH Manager LLC, Longleaf Ventures LLC, Natural Aggregates Partners LLC, Ornstein-Schuler LLC, Ornstein-Schuler Investments LLC, Partnership Representative Management LLC, Southeastern Mining Investments LLC, The Ornstein-Schuler Group LLC and Yellowhammer Ventures LLC (together, the "Plaintiffs") bring this action for declaratory relief and state as follows:

## **NATURE OF THE ACTION**

1.      Internal Revenue Service Notice 2017-10, 2017-4 I.R.B. 544, attached as Exhibit 1, requires taxpayers and material advisors to report information about certain transactions involving a charitable contribution of a conservation easement.

2.      Specifically, Notice 2017-10 identifies transactions described in section 2 of the Notice as "listed transactions" for purposes of 26 U.S.C. §§ 6111 and 6112 and 26 C.F.R. § 1.6011-4(b)(2).

3.      The Internal Revenue Service ("IRS") did not include in Notice 2017-10 any discussion or examination of relevant facts and data supporting its decision to identify syndicated conservation easement transactions as listed transactions.

4.      The consequences for noncompliance with the Internal Revenue Code provisions applicable to listed transactions include both civil penalties and criminal prosecution.

5.      The U.S. Department of the Treasury ("Treasury") and the IRS issued Notice 2017-10 without following the notice-and-comment procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551, 553-59, 701-06 ("APA") ("notice-and-comment procedures").

6.      Notice 2017-10 is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Specifically, Notice 2017-10 violates Congress's clear directive that "[r]eportable transactions"—a category that includes "[l]isted transactions," *see* 26 C.F.R. § 1.6011-4(b)—be defined "under regulations," not informal guidance. 26

U.S.C. § 6707A(c)(1).  Notice 2017-10's requirements are also contrary to Congress's statutory directive to incentivize land conservation.

7.    Notice 2017-10 does not include any discussion or examination of relevant facts and data supporting its decision to identify syndicated conservation easement transactions as listed transactions.  Nor does Notice 2017-10 explain why the use of a pass-through entity to grant a conservation easement is a tax avoidance transaction or why the mere possibility of a charitable contribution deduction that equals or exceeds an amount that is two and one-half times the amount of the investor's investment is a tax avoidance transaction.

8.    Plaintiffs seek entry of a judgment (a) declaring that Notice 2017-10 is unlawful and (b) setting aside Notice 2017-10 as to Plaintiffs and any of their direct or indirect owners.

9.    Plaintiffs seek an order requiring the IRS to return to Plaintiffs all documents and information obtained as a direct result of the filing of Forms 8886 and 8918.

10.    Each of the United States Court of Appeals for the Sixth Circuit in *Mann Construction, Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022), the United States Tax Court in *Green Valley Investors, LLC v. Commissioner*, 159 T.C. No. 5 (Nov. 9, 2022), the United States District Court for the

Northern District of Alabama in *Green Rock, LLC v. IRS*, No. 2:21-cv-1320-ACA, 2023 WL 1478444 (N.D. Ala. Feb. 2, 2023), the United States District Court for the Northern District of Ohio in *GBX Associates, LLC v. United States*, No. 1:22-cv-401, 2022 WL 16923886 (N.D. Ohio Nov. 14, 2022), the United States District Court for the Eastern District of Tennessee in *CIC Services, LLC v. IRS*, 592 F. Supp. 3d 677 (E.D. Tenn. 2022), and the United States District Court for the Eastern District of Michigan in *Mann Construction, Inc. v. United States*, No. 1:20-cv-11307, 2023 WL 248814 (E.D. Mich. Jan. 18, 2023), has set aside an IRS notice for failure to have satisfied the notice-and-comment procedures.

11.    For the very same reasons articulated in those decisions, this Court should declare that Notice 2017-10 is unlawful and set it aside.

## PARTIES, JURISDICTION AND VENUE

12.    Agro Holdings LLC ("Agro") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Agro acquired real property located in Cherokee County, Alabama.

13.    Alameda Aggregates LLC ("Alameda") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Alameda acquired real property located in Jackson County, Alabama.

14.     Aquatic Creek LLC ("Aquatic Creek") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Aquatic Creek acquired real property located in Jackson County, Alabama.

15.     Arden Row Assets LLC ("Arden Row") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Arden Row acquired real property located in Jackson County, Alabama.

16.     Ash Resources LLC ("Ash Resources") is an Alabama limited liability company with its principal place of business in Alabama.  In 2015, Ash Resources acquired real property located in Cherokee County, Alabama.

17.     Avalon Resources LLC ("Avalon") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Avalon acquired real property located in Jackson County, Alabama.

18.     Bama Soil LLC ("Bama") is an Alabama limited liability company with its principal place of business in Alabama.  In 2015, Bama acquired real property located in Cherokee County, Alabama and Etowah County, Alabama.

19.     Barn Creek LLC ("Barn Creek") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Barn Creek acquired real property located in Jackson County, Alabama.

20.     Basswood Aggregates LLC ("Basswood") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Basswood acquired real property located in Jackson County, Alabama.

21.     Begonia Resources LLC ("Begonia Resources") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Begonia Resources acquired real property located in Jackson County, Alabama.

22.     Canary Aggregates LLC ("Canary Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Canary Aggregates acquired real property located in Jackson County, Alabama.

23.     Cedar Place Resources LLC ("Cedar Place") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Cedar Place acquired real property located in Jackson County, Alabama.

24.     Centerland Holdings LLC ("Centerland") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Centerland acquired real property located in Jackson County, Alabama.

25.     Cherry Rock Resources LLC ("Cherry Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In

2016, Cherry Rock acquired real property located in Jackson County, Alabama.

26.     Crimson S&G LLC ("Crimson") is an Alabama limited liability company with its principal place of business in Alabama.  In 2015, Crimson acquired real property located in Cherokee County, Alabama.

27.     Deer Valley Resources LLC ("Deer Valley") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Deer Valley acquired real property located in Jackson County, Alabama.

28.     Delwood Resources LLC ("Delwood") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Delwood acquired real property located in Jackson County, Alabama.

29.     Dry Creek Resources LLC ("Dry Creek") is an Alabama limited liability company with its principal place of business in Alabama.  In 2015, Dry Creek acquired real property located in Cherokee County, Alabama.

30.     Dynamite Creek LLC ("Dynamite") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Dynamite acquired real property located in Jackson County, Alabama.

31.    Edge Rock LLC ("Edge Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Edge Rock acquired real property located in Morgan County, Alabama.

32.    Falling Rock LLC ("Falling Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Falling Rock acquired real property located in Jackson County, Alabama.

33.    Field View LLC ("Field View") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Field View acquired real property located in Morgan County, Alabama.

34.    Forsythia Holdings LLC ("Forsythia Holdings") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Forsythia Holdings acquired real property located in Jackson County, Alabama.

35.    Gardenia Aggregates LLC ("Gardenia Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Gardenia Aggregates acquired real property located in Jackson County, Alabama.

36.    Giant Aggregates LLC ("Giant Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In

2016, Giant Aggregates acquired real property located in Jackson County, Alabama.

37.    Greenview Aggregates LLC ("Greenview") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Greenview acquired real property located in Morgan County, Alabama.

38.    Hallo Resources LLC ("Hallo Resources") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Hallo Resources acquired real property located in Jackson County, Alabama.

39.    Hard Rock Holdings LLC ("Hard Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Hard Rock acquired real property located in Jackson County, Alabama.

40.    Harrow Aggregates LLC ("Harrow Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Harrow Aggregates acquired real property located in Jackson County, Alabama.

41.    Hematite Aggregates LLC ("Hematite") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Hematite acquired real property located in Morgan County, Alabama.

42.    Hillside View LLC ("Hillside View") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Hillside View acquired real property located in Morgan County, Alabama.

43.    Igneous Rock LLC ("Igneous Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Igneous Rock acquired real property located in Lawrence County, Alabama.

44.    Inshore Aggregates LLC ("Inshore Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Inshore Aggregates acquired real property located in Jackson County, Alabama.

45.    Iris Holdings LLC ("Iris Holdings") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Iris Holdings acquired real property located in Colbert County, Alabama.

46.    JC Aggregates LLC ("JC Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, JC Aggregates acquired real property located in Jackson County, Alabama.

47.    Jet Rock Holdings LLC ("Jet Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Jet Rock acquired real property located in Lawrence County, Alabama.

48.     KC Aggregates LLC ("KC Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, KC Aggregates acquired real property located in Lawrence County, Alabama.

49.     Little River Minerals LLC ("Little River") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Little River acquired real property located in Jackson County, Alabama.

50.     Low Angle Aggregates LLC ("Low Angle") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Low Angle acquired real property located in Jackson County, Alabama.

51.     Lowland Creek LLC ("Lowland Creek") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Lowland Creek acquired real property located in Lawrence County, Alabama.

52.     Magnolia River Minerals LLC ("Magnolia River") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Magnolia River acquired real property located in Jackson County, Alabama.

53.     Mattock Holdings LLC ("Mattock Holdings") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Mattock Holdings acquired real property located in Madison County, Alabama.

54.     Midway Holdings LLC ("Midway Holdings") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Midway Holdings acquired real property located in Jackson County, Alabama.

55.     Natural Aggregates LLC ("Natural Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Natural Aggregates acquired real property located in Cherokee County, Alabama.

56.     Nature Point Aggregates LLC ("Nature Point") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Nature Point acquired real property located in Madison County, Alabama.

57.     North Wall Holdings LLC ("North Wall") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, North Wall acquired real property located in Cherokee County, Alabama.

58.     Oak Bayou Holdings LLC ("Oak Bayou") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Oak Bayou acquired real property located in Cherokee County, Alabama.

59.     Open Aggregates LLC ("Open Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In

2018, Open Aggregates acquired real property located in Lauderdale County, Alabama.

60.    Palmetto Aggregates LLC ("Palmetto Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Palmetto Aggregates acquired real property located in Morgan County, Alabama.

61.    Quail Rock Aggregates LLC ("Quail Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Quail Rock acquired real property located in Morgan County, Alabama.

62.    Quorum Holdings LLC ("Quorum Holdings") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Quorum Holdings acquired real property located in Morgan County, Alabama.

63.    Riddle Aggregates LLC ("Riddle Aggregates") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Riddle Aggregates acquired real property located in Morgan County, Alabama.

64.    Rim Rock Holdings LLC ("Rim Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Rim Rock acquired real property located in Morgan County, Alabama.

65.     Spade Rock LLC ("Spade Rock") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Spade Rock acquired real property located in Morgan County, Alabama.

66.     Sterling Land Minerals LLC ("Sterling Land") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Sterling Land acquired real property located in Lawrence County, Alabama.

67.     Threshing Stone LLC ("Threshing Stone") is an Alabama limited liability company with its principal place of business in Alabama.  In 2017, Threshing Stone acquired real property located in Morgan County, Alabama.

68.     Top Rope Holdings LLC ("Top Rope") is an Alabama limited liability company with its principal place of business in Alabama.  In 2018, Top Rope acquired real property located in Morgan County, Alabama.

69.     Unique Resources LLC ("Unique Resources") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Unique Resources acquired real property located in Jackson County, Alabama.

70.     Upland Creek LLC ("Upland Creek") is an Alabama limited liability company with its principal place of business in Alabama.  In 2016, Upland Creek acquired real property located in Lawrence County, Alabama.

71. Yard Rock Holdings LLC ("Yard Rock") is an Alabama limited liability company with its principal place of business in Alabama. In 2018, Yard Rock acquired real property located in Jackson County, Alabama.

72. Yield Rock Resources LLC ("Yield Rock") is an Alabama limited liability company with its principal place of business in Alabama. In 2017, Yield Rock acquired real property located in Morgan County, Alabama.

73. Zip Rock Resources LLC ("Zip Rock") is an Alabama limited liability company with its principal place of business in Alabama. In 2016, Zip Rock acquired real property located in Jackson County, Alabama.

74. Conservation Saves LLC ("Conservation Saves") is a Georgia limited liability company with its principal place of business in Georgia. Conservation Saves completed assessments of real property held by Ash Resources, Bama, Crimson and Dry Creek, engaged appraisers, coordinated with land trusts and provided additional services with respect to transactions involving such real property.

75. Ecoventures LLC ("Ecoventures") is a Georgia limited liability company with its principal place of business in Georgia. Ecoventures completed assessments of real property held by Alameda, Aquatic Creek, Arden Row, Avalon, Barn Creek, Basswood, Begonia Resources, Canary Aggregates, Cedar Place, Delwood, Edge Rock, Forsythia Holdings, Gardenia

Aggregates, Hallo Resources, Hematite, Iris Holdings, JC Aggregates, Low Angle, Midway Holdings, Nature Point, North Wall, Oak Bayou, Open Aggregates, Palmetto Aggregates, Quail Rock, Quorum Holdings, Riddle Aggregates, Rim Rock, Spade Rock, Threshing Stone, Top Rope, Yard Rock and Yield Rock, engaged appraisers, coordinated with land trusts and provided additional services with respect to transactions involving such real property.

76.   Galt Holdings LLC ("Galt Holdings") is an Alabama limited liability company with its principal place of business in Georgia.   Galt Holdings held direct or indirect interests in Ash Resources, Bama, Crimson and Dry Creek.

77.   Galt Mining Investments LLC ("Galt Mining") is a Georgia limited liability company with its principal place of business in Georgia.  Galt Mining completed assessments of real property held by Agro, Aquatic Creek, Ash Resources, Avalon, Bama, Barn Creek, Canary Aggregates, Centerland, Cherry Rock, Crimson, Deer Valley, Dry Creek, Dynamite, Edge Rock, Falling Rock, Field View, Giant Aggregates, Greenview, Hard Rock, Harrow Aggregates, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, North Wall,

Oak Bayou, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Sterling Land, Threshing Stone, Unique Resources, Upland Creek, Yield Rock and Zip Rock, evaluated and engaged other service providers, prepared business plans and provided additional services with respect to transactions involving such real property.

78.    GH Manager LLC ("GH Manager") is a Georgia limited liability company with its principal place of business in Georgia.  GH Manager is the tax matters partner, as defined in 26 U.S.C. § 6231(a)(7) (2015), for each of Ash Resources, Bama, Crimson and Dry Creek.

79.    Long Leaf Ventures LLC ("Long Leaf") is an Alabama limited liability company with its principal place of business in Georgia.  Long Leaf held direct or indirect interests in Aquatic Creek, Avalon, Barn Creek, Canary Aggregates, Edge Rock, Iris Holdings, JC Aggregates, Low Angle, North Wall, Oak Bayou, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Threshing Stone and Yield Rock.

80.    Natural Aggregates Partners LLC ("NAP") is a Georgia limited liability company with its principal place of business in Georgia.  NAP held direct or indirect interests in Alameda, Arden Row, Basswood, Begonia Resources, Cedar Place, Delwood, Forsythia Holdings, Gardenia Aggregates,

Hallo Resources, Hematite, Midway Holdings, Nature Point, Open Aggregates, Palmetto Aggregates, Rim Rock, Top Rope and Yard Rock.

81.     Ornstein-Schuler LLC ("Ornstein-Schuler") is a Georgia limited liability company with its principal place of business in Georgia.  Ornstein-Schuler is the tax matters partner, as defined in 26 U.S.C. § 6231(a)(7) (2015), for each of Agro, Aquatic Creek, Avalon, Barn Creek, Canary Aggregates, Centerland, Cherry Rock, Deer Valley, Dynamite, Edge Rock, Falling Rock, Field View, Giant Aggregates, Greenview, Hard Rock, Harrow Aggregates, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, North Wall, Oak Bayou, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Sterling Land, Threshing Stone, Unique Resources, Upland Creek, Yield Rock and Zip Rock, and is the partnership representative, as defined in 26 U.S.C. § 6223(a), for Arden Row.

82.     Ornstein-Schuler Investments LLC ("OSI") is a Georgia limited liability company with its principal place of business in Georgia.  OSI identified and engaged legal and other advisors to provide services in connection with the sale of indirect interests in Agro, Aquatic Creek, Avalon, Barn Creek, Canary Aggregates, Centerland, Cherry Rock, Deer Valley,

Dynamite, Edge Rock, Falling Rock, Field View, Giant Aggregates, Greenview, Hard Rock, Harrow Aggregates, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, North Wall, Oak Bayou, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Sterling Land, Threshing Stone, Unique Resources, Upland Creek, Yield Rock and Zip Rock, and preparation of tax returns and related documents for such entities.

83.    Partnership Representative Management LLC ("PRM LLC") is a Georgia  limited liability company with its principal place of business in Georgia.  PRM LLC is the partnership representative, as defined in 26 U.S.C. § 6223(a), for each of Alameda, Basswood, Begonia Resources, Cedar Place, Delwood, Forsythia Holdings, Gardenia Aggregates, Hallo Resources, Hematite, Midway Holdings, Nature Point, Open Aggregates, Palmetto Aggregates, Rim Rock, Top Rope and Yard Rock.

84.    Southeastern Mining Investments LLC ("Southeastern Mining") is a Georgia limited liability company with its principal place of business in Georgia.  Southeastern Mining completed assessments of real property held by Alameda, Arden Row, Basswood, Begonia Resources, Cedar Place, Delwood, Forsythia Holdings, Gardenia Aggregates, Hallo Resources,

Hematite, Midway Holdings, Nature Point, Open Aggregates, Palmetto Aggregates, Rim Rock, Top Rope and Yard Rock, evaluated and engaged other service providers, prepared business plans and provided additional services with respect to transactions involving such real property.

85.    The Ornstein-Schuler Group LLC ("TOSG") is an Alabama limited liability company with its principal place of business in Georgia. TOSG identified and engaged legal and other advisors to provide services in connection with the sale of indirect interests in Alameda, Arden Row, Basswood, Begonia Resources, Cedar Place, Delwood, Forsythia Holdings, Gardenia Aggregates, Hallo Resources, Hematite, Midway Holdings, Nature Point, Open Aggregates, Palmetto Aggregates, Rim Rock, Top Rope and Yard Rock, and preparation of tax returns and related documents for such entities.

86.    Yellowhammer Ventures LLC ("Yellowhammer") is an Alabama limited liability company with its principal place of business in Georgia.  Yellowhammer held direct or indirect interests in Agro, Centerland, Cherry Rock, Deer Valley, Dynamite, Falling Rock, Field View, Giant Aggregates, Greenview, Hard Rock, Harrow Aggregates, Hillside View, Igneous Rock, Inshore Aggregates, Jet Rock, KC Aggregates, Little River, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, Sterling Land, Unique Resources, Upland Creek and Zip Rock.

87.     Defendants are the United States of America; one of its administrative agencies, Treasury; and a bureau of Treasury, the IRS.

88.     This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 2201 and the APA, 5 U.S.C. § 702.

89.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### A.     Congress Created and Enhanced Deductions to Promote Land Conservation

90.     In 1980, Congress added section 170(h) to the Internal Revenue Code, making permanent a tax incentive related to the preservation of property: a tax deduction for the charitable contribution of an easement that (a) preserves land areas for outdoor recreation by, or education of, the general public; (b) protects a relatively natural habitat of fish, wildlife or plants, or similar ecosystem; (c) preserves open space; or (d) preserves a historically importantly land area.  *See* Act of Dec. 17, 1980, Pub. L. No. 96-541, § 6(a), 94 Stat. 3204, 3206.

91.     The House of Representatives Committee on Ways and Means explained that this legislation was needed in light of the "increasingly important role that conservation easements have come to play in efforts to

conserve and protect the country's natural resources and its cultural heritage."
*See* H.R. Rep. No. 96-1278, at 15 (1980).

92.    In the ensuing 40 years, Congress has modified, extended, and enhanced section 170(h) several times.

93.    For example, in 2006, Congress made significant changes to the Code.  Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780. Some of those changes were designed to combat alleged abuses: Congress imposed requirements for appraisers who value land donations and lowered the threshold for penalties on inaccurate valuations.  26 U.S.C. § 6695A(c); Pub. L. No. 109-280, § 1219, 120 Stat. at 1084.  At the same time, Congress substantially increased the size of tax deductions that taxpayers can take for qualified donations—from 30 percent of the taxpayer's adjusted gross income to 50 percent.  Pub. L. No. 109-280, § 1206(a)(1), 120 Stat. at 1068.  Congress also extended the carry-forward time for which taxpayers can use deductions from five years to 15 years.  *Id*.

94.    These enhanced benefits were initially only temporary, designed to last for two years.  But Congress extended them in 2008, 2010, 2012 and 2014. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 15302, 122 Stat. 1651, 2263; Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 723,

124 Stat. 3296, 3316; American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 206, 126 Stat. 2313, 2324; Tax Increase Prevention Act of 2014, Pub. L. No. 113-295, § 106, 128 Stat. 4010, 4013.  Finally, in 2015, Congress made the increased deductions and longer carry-forward period permanent. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 111, 129 Stat. 2242, 3046-47 (2015).

95.    When Congress extended these tax incentives, it also considered proposals from the IRS to further restrict the availability of the deduction. Among other things, the IRS proposed extensive reporting and disclosure requirements to address its "concerns regarding abusive uses of this deduction" by "organizations that knowingly accept contributions of easements that are overvalued or do not further conservation purposes."  U.S. Dep't of the Treasury, *General Explanations of the Administration's Fiscal Year 2016 Revenue Proposals* 189–91 (2015).

96.    Congress did not accept these proposals. It declined to amend section 170 to further restrict or prohibit the conservation easement deduction, even as it made the prior enhancements permanent.

97.    In December 2022, Congress did amend section 170 by adding paragraphs (f)(19) and (h)(7), but those amendments were effective only as to

contributions made after December 29, 2022.  Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 605.

**B.    Plaintiffs Granted Conservation Easements on Real Property to Obtain the Congressionally Enacted Tax Benefits**

98.    The Internal Revenue Code allows a deduction for a qualified conservation contribution, which is a contribution of a qualified real property interest to a qualified organization exclusively for conservation purposes.  26 U.S.C. §§ 170(f)(3)(B)(iii), 170(h)(1)–(5).

99.    Each of Agro, Alameda, Aquatic Creek, Arden Row, Ash Resources, Avalon, Bama, Barn Creek, Basswood, Begonia Resources, Canary Aggregates, Cedar Place, Centerland, Cherry Rock, Crimson, Deer Valley, Delwood, Dry Creek, Dynamite, Edge Rock, Falling Rock, Field View, Forsythia Holdings, Gardenia Aggregates, Giant Aggregates, Greenview, Hallo Resources, Hard Rock, Harrow Aggregates, Hematite, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Midway Holdings, Natural Aggregates, Nature Point, North Wall, Oak Bayou, Open Aggregates, Palmetto Aggregates, Quail Rock, Quorum Holdings, Riddle Aggregates, Rim Rock, Spade Rock, Sterling Land, Threshing Stone, Top Rope, Unique

Resources, Upland Creek, Yard Rock, Yield Rock and Zip Rock (collectively, the "PropCo Plaintiffs") is classified as a partnership for United States federal tax purposes under 26 C.F.R. §§ 301.7701-2 and 301.7701-3.

100.   Each PropCo Plaintiff has multiple direct or indirect investors who acquired their interests in the PropCo Plaintiff understanding that their return on investment could come through allocations of deductions allowed under the Internal Revenue Code, including the deduction allowed under 26 U.S.C. § 170.

101.   Each PropCo Plaintiff other than Agro, Greenview and Threshing Stone, contributed a conservation easement on real property it held to a charitable organization and reported a deduction under 26 U.S.C. § 170 for its contribution.

102.   Each of Aquatic Creek, Ash Resources, Avalon, Bama, Barn Creek, Canary Aggregates, Centerland, Cherry Rock, Crimson, Deer Valley, Dry Creek, Dynamite, Edge Rock, Falling Rock, Field View, Giant Aggregates, Hard Rock, Harrow Aggregates, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, North Wall, Oak Bayou, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Sterling Land, Top Rope, Unique Resources,

Upland Creek, Yield Rock and Zip Rock subsequently contributed a fee simple interest in real property it held to a charitable organization and reported a deduction under 26 U.S.C. § 170 for its contribution.

103.   Separately, each of Agro, Greenview and Threshing Stone contributed a fee simple interest in real property it held to a charitable organization and reported a deduction under 26 U.S.C. § 170 for its contribution.

C.   **Defendant Has Admitted the IRS Issued Notice 2017-10 in Violation of the APA, without Complying with the APA's Notice and Comment Procedures**

104.   Before an agency may promulgate a rule that has the force of law, the APA requires the agency to publish a notice about the proposed rule, allow the public to comment on the rule and, after considering the comments, make appropriate changes and include in the final rule a concise general statement of its contents (the "notice-and-comment procedures").  5 U.S.C. §§ 551, 553-59, 701-06.

105.   The APA distinguishes between "legislative rules," which are subject to the APA's notice-and-comment requirements, and "interpretative rules," which are not.  *See* 5 U.S.C. § 553(b).  Generally, a "legislative" or "substantive" rule is one that "has the 'force and effect of law,'" *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055

(2019) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979)), and

"creates new law, rights, or duties." *Warshauer v. Solis*, 577 F.3d 1330, 1337

(11th Cir. 2009).   In contrast, an "interpretive" rule merely "advise[s] the

public of the agency's construction of the statutes and rules that it

administers."   *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019)

(quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015)).

106.   Listing notices, such as Notice 2017-10, are legislative rules.  *See*

*Green Valley Investors, LLC v. Commissioner*, 159 T.C. No. 5 (Nov. 9, 2022)

(holding that "Notice 2017-10 creates new substantive reporting obligations

for taxpayers . . . the violation of which prompts exposure to financial

penalties and sanctions – the prototype of a legislative rule."); *see also Mann*

*Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022) (finding

Notice 2007-83 is a legislative rule because taxpayers "had no obligation to

provide information regarding listed transactions like this one to the IRS

before the Notice").

107.   Defendant has admitted, at least in cases controlled by the Sixth

Circuit's decision in *Mann Construction*, that "Notice 2017-10 is a rule

subject to notice-and-comment procedures."  Answer ¶ 54, *GBX Assocs., LLC*

*v. United States*, No. 1:22-cv-00401-PAB (N.D. Ohio May 20, 2022), ECF

No. 15.  A copy of this answer filed by Defendant is attached as Exhibit 2.

108.   Defendant has also admitted, at least in cases controlled by the Sixth Circuit's decision in *Mann Construction*, that "[b]ecause Notice 2017-10 is a 'rule' under the APA, the IRS was required to issue a notice of proposed rulemaking in advance of its effective date." *Id.* ¶ 55.

109.   And in another case in this Judicial District, Defendant admitted that the IRS did not follow these notice-and-comment procedures when it issued Notice 2017-10.  Answer ¶ 58, *Green Rock, LLC v. IRS*, No. 2:21-cv-1320-ACA (N.D. Ala. Jan. 20, 2022), ECF No. 13.  A copy of this answer filed by Defendant is attached as Exhibit 3.

110.   The Anti-Injunction Act does not preclude taxpayers from challenging the validity of IRS listing notices, including Notice 2017-10.  *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021).

111.   Listing notices that were promulgated by the IRS without following the notice-and-comment procedures of the APA are invalid and must be set aside under *Mann Construction*, 27 F.4th 1138.  *See also Green Rock, LLC v. IRS*, No. 2:21-cv-1320-ACA, 2023 WL 1478444 (N.D. Ala. Feb. 2, 2023); *Green Valley Investors*, 159 T.C. No. 5; *GBX Assocs., LLC v. United States*, No. 1:22-cv-401, 2022 WL 16923886 (N.D. Ohio Nov. 14, 2022); *CIC Servs., LLC v. IRS*, 592 F. Supp. 3d 677 (E.D. Tenn. 2022).

### D. Events Leading Up to the Issuance of Notice 2017-10

112.   For at least several months before the issuance of Notice 2017-10, the IRS considered whether to treat as listed transactions certain donations of conservation easements.

113.   At no point did the IRS or Treasury follow the notice-and-comment procedures set forth in section 553 of the APA with respect to the decision that was ultimately reflected in Notice 2017-10.

114.   Instead, on October 30, 2016, an IRS attorney stated at a meeting of the Land Trust Alliance that the IRS was considering making syndicated conservation easement donations a listed transaction.  *See* Fred Stokeld, *Controversial Easement Transaction Might Get Listed*, 153 Tax Notes Fed. (TA) 773, 773 (Nov. 7, 2016) (attached as Exhibit 4).

115.   In the following months, rather than publishing the action that it was considering in the Federal Register and thereby making it generally available to the public, IRS employees spoke with and corresponded with select members of the public about the decision whether to issue a listing notice.  *See* Email from Senator Isakson's Chambers to R. Chapman and K. Gross (Nov. 8, 2016, 3:55 PM) with attached Partnership for Conservation Case Study: Cherokee National Forest, and Conservation Easement Position Paper October 2016 (attached as Exhibit 5); Email from K. Sorensen to S.

Dinwiddie and K. Gross (Nov. 6, 2016, 5:43 PM) (attached as Exhibit 6); Email from K. Pace to S. Dinwiddie and K. Gross (Nov. 8, 2016, 11:36 AM) with attached Letter to IRS Office of Chief Counsel re: November 3, 2016 Tax Notes (attached as Exhibit 7); Email from D. Troyer to K. Gross (Dec. 1, 2016, 1:21 PM) with attached memorandum on Land Trust Alliance (LTA) Position on Monetized Easements (attached as Exhibit 8).

116.  One private attorney who supported the proposed IRS action stated that the action would "put investors on notice about what's going on." *See* Fred Stokeld, *Controversial Easement Transaction Might Get Listed*, 153 Tax Notes Fed. (TA) 773, 773 (Nov. 7, 2016) (Exhibit 4).

117.  On December 23, 2016, Treasury and the IRS publicly released an advance copy of Notice 2017-10.

118.  Notice 2017-10 was published in the Internal Revenue Bulletin on January 23, 2017.

**E.    Notice 2017-10 Is a Legislative Rule**

119.  Notice 2017-10 has an effective date of December 23, 2016. Notice 2017-10, 2017-4 I.R.B. 544, 545.

120.  The Background Information Note to Notice 2017-10 states "Prospective Application: Yes."  IRS, Background Information Note, at 3 (attached as Exhibit 9).

121.   Notice 2017-10 identifies syndicated conservation easement transactions and any substantially similar transactions as "listed transaction[s]" for purposes of 26 U.S.C. §§ 6111 and 6112 and 26 C.F.R. § 1.6011-4(b)(2).

122.   This designation as a "listed transaction" imposes reporting and record-keeping requirements on taxpayers who participate in the transaction and on material advisors.  26 C.F.R. § 1.6011-4(b).  These requirements did not apply to transactions described in Notice 2017-10 until December 23, 2016.

123.   Notice 2017-10 specifies that participants in the transaction "include, but are not limited to, investors, the pass-through entity (any tier, if multiple tiers are involved in the transaction), or any other person whose tax return reflects tax consequences or a tax strategy described" in the Notice. 2017-4 I.R.B. at 546.

124.   The required reporting for participants is done on IRS Form 8886, Reportable Transaction Disclosure Statement, which must be included with the taxpayer's income tax return and separately submitted to the IRS Office of Tax Shelter Analysis.

125.   The instructions to Form 8886 estimate that the burden of completing it is, on average, 21 hours and 31 minutes, while noting that "[t]he

time needed to complete and file this form will vary depending on individual circumstances."

126.   Each taxpayer required by Notice 2017-10 to file Form 8886 who fails to do so faces a civil penalty of up to $100,000 or $200,000, depending on whether the taxpayer is a natural person.  26 U.S.C. § 6707A(b)(2)(A).

127.   Any person required by Notice 2017-10 to file Form 8886 who "willfully" fails to do so also faces criminal sanctions of fines and up to one year in prison for each unfiled form.  26 U.S.C. § 7203.

128.   Material advisors have both reporting and list maintenance obligations that arise from Notice 2017-10.  These requirements did not apply until December 23, 2016.

129.   The required reporting for material advisors is done on IRS Form 8918, Material Advisor Disclosure Statement, which must be filed with the IRS Office of Tax Shelter Analysis by the last day of the month that follows the end of the calendar quarter in which the advisor became a material advisor.

130.   Material advisors who file a Form 8918 receive a reportable transaction number from the IRS and must provide that reportable transaction number to all taxpayers and other material advisors for whom the material advisor acts as a material advisor.

131.   The instructions to Form 8918 estimate that the burden of completing it is, on average, 14 hours and 31 minutes, while noting that "[t]he time needed to complete and file this form will vary depending on individual circumstances."

132.   Each material advisor required by Notice 2017-10 to file Form 8918 who fails to do so faces a civil penalty of the greater of $200,000 or 50 percent of the gross income derived by such person with respect to aid, assistance or advice which is provided with respect to the listed transaction, increased to 75 percent in the case of an intentional failure.  26 U.S.C. § 6707(b).

133.   Any person required by Notice 2017-10 to file Form 8918 who "willfully" fails to do so faces criminal sanctions of fines and up to one year in prison for each unfiled form.  26 U.S.C. § 7203.

134.   A material advisor is also required to maintain a list identifying each person with respect to whom the advisor acted as a material advisor.  The list must include (1) an itemized statement containing (a) the name of each reportable transaction, the citation to the published guidance number for the transaction and the reportable transaction number, (b) the name, address and TIN of each person required to be included, (c) the date on which each person entered into each reportable transaction, if known, (d) the amount invested in

36

each reportable transaction by each person, if known, (e) a summary or schedule of the tax treatment that each person is intended or expected to derive from participation in each reportable transaction, and (f) the name of each other material advisor to the transaction, if known; (2) a detailed description of the transaction that describes both the tax structure of the transaction and the purported tax treatment of the transaction; and (3) documents, including (a) a copy of any designation agreement and (b) copies of additional written materials, including tax analyses or opinions, related to each reportable transaction.  26 C.F.R. § 301.6112-1.  This requirement did not apply with respect to transactions described in Notice 2017-10 until December 23, 2016.

135.   Each material advisor must maintain that list in readily accessible form for seven years and make it available to the IRS upon request.  26 C.F.R. § 301.6112-1.

136.   Each material advisor required by Notice 2017-10 to maintain a list who fails to make such list available within 20 days of a written request from the IRS faces a civil penalty of $10,000 for each day of such failure.  26 U.S.C. § 6708(a).

137.   Any person required by Notice 2017-10 to maintain a list and make it available upon request who "willfully" fails to do so also faces criminal sanctions of fines and up to one year in prison.  26 U.S.C. § 7203.

138.   In addition to the federal reporting obligations, several states have laws that impose reporting obligations that are triggered by the IRS's "listed transaction" designation. *See, e.g.*, Cal. Rev. & Tax. Code § 18628 (West 2005); Colo. Rev. Stat. Ann. § 39-22-653 (West 2009); 35 Ill. Comp. Stat. Ann. 5/501 (West 2004); Minn. Stat. Ann. § 289A.121 (West 2017); N.Y. Tax Law § 25 (McKinney 2015); Utah Code Ann. § 59-1-1306 (West 2008); Wis. Stat. Ann. § 71.81 (West 2007).  As a result, participants must file disclosures with state revenue departments or face penalties for their failure to do so.

139.   On November 9, 2022, the U.S. Tax Court issued a reviewed opinion in which fifteen judges agreed (with two judges dissenting) that Notice 2017-10 was improperly issued because it was issued without following the APA's notice-and-comment procedures.  *Green Valley Investors*, 159 T.C. No. 5.

140.   Defendants have stated that they disagree with the Tax Court's decision in *Green Valley*.  *See* Syndicated Conservation Easement Transactions as Listed Transactions [REG-106134-22], 87 Fed. Reg. 75,185, 75,190 (Dec. 8, 2022).  Despite that disagreement, Defendants issued proposed regulations to identify certain syndicated conservation easement transactions as listed transactions.  *Id.*  Further, Defendants have stated that

38

"it is the position of the Treasury Department and the IRS that disclosure and list maintenance requirements for syndicated conservation easement transactions identified as listed transactions in Notice 2017-10 continue to be in effect, other than in the Sixth Circuit." *Id.*

### F.   Plaintiffs Suffer Ongoing Economic Harm Because of Notice 2017-10

141.   Plaintiffs may be considered material advisors and participants with respect to conservation easement transactions that the IRS considers substantially similar to the listed transaction described in Notice 2017-10.

142.   Plaintiffs may be considered material advisors because they may have provided material aid by being a flow-through entity that acquired real estate and entitled its members to several investment strategies, one of such strategies being the potential donation of a conservation easement to a qualified land trust and the donation of the remaining fee simple interest, or by providing services in connection with transactions entered into by such flow-through entities.

143.   Although Plaintiffs believe that the transactions in which they have advised and participated are not tax avoidance transactions, the penalties for noncompliance with Notice 2017-10 are so extreme that the Plaintiffs work diligently to comply with the reporting requirements arising from the Notice.

39

144.   Plaintiffs spend significant time and money complying with the onerous requirements Notice 2017-10 imposes on the Plaintiffs as material advisors and participants.

145.   Plaintiffs also spend significant time and money providing information regarding the reporting and list maintenance requirements to other material advisors, to the investors who participate in the funds related to the conservation properties in which the Plaintiffs have invested, and to the tax professionals who work with those material advisors and investors.

146.   Plaintiffs also pay outside advisors for guidance on compliance with Notice 2017-10 and review of the Forms 8886 and 8918 that must be filed with the IRS.

147.   Each Plaintiff filed or caused to be filed a disclosure statement on Form 8886 with its timely filed tax return to disclose its participation in a conservation easement transaction during the year in which it granted a conservation easement, contributed a fee simple interest or otherwise participated in transactions purportedly described in Notice 2017-10.

148.   Additionally, each Plaintiff filed or caused to be filed a disclosure statement on Form 8918 to disclose that it may be a material advisor with respect to one or more conservation easement transactions described in Notice 2017-10.

40

149. Additionally, subsequent to filing Forms 8918 and 8886, each PropCo Plaintiff's tax return was selected by the IRS for examination. The IRS's examination plans focused on the transactions reported on Forms 8918 and 8886. Plaintiffs have spent numerous hours and incurred significant costs in connection with these examinations, including for outside advisors representing them in these examinations.

150. The IRS has collected many documents from Plaintiffs as a direct result of Notice 2017-10: Forms 8886, Forms 8918, and many documents related to audits of transactions disclosed in those Forms 8886 and 8918.

151. As a result of positions taken by the IRS in the examinations of their tax returns, each of Agro, Aquatic Creek, Ash Resources, Avalon, Bama, Barn Creek, Canary Aggregates, Cedar Place, Centerland, Cherry Rock, Crimson, Deer Valley, Dry Creek, Dynamite, Edge Rock, Falling Rock, Field View, Forsythia Holdings, Giant Aggregates, Greenview, Hard Rock, Harrow Aggregates, Hematite, Hillside View, Igneous Rock, Inshore Aggregates, Iris Holdings, JC Aggregates, Jet Rock, KC Aggregates, Little River, Low Angle, Lowland Creek, Magnolia River, Mattock Holdings, Natural Aggregates, North Wall, Oak Bayou, Palmetto Aggregates, Quail Rock, Quorum Holdings, Riddle Aggregates, Spade Rock, Sterling Land, Threshing Stone, Unique Resources, Upland Creek, Yield Rock and Zip Rock have filed

petitions in the United States Tax Court, and are incurring significant costs in litigating those cases. In addition, each of Alameda, Arden Row, Basswood, Begonia Resources, Delwood, Gardenia Aggregates, Hallo Resources, Midway Holdings, Nature Point, Open Aggregates, Rim Rock, Top Rope and Yard Rock have incurred significant costs in connection with ongoing examinations of their tax returns, and anticipate having to file petitions in the United States Tax Court as a consequence of positions that the IRS is expected to take in those examinations.

152.   There is no mechanism for the Plaintiffs to recover the economic costs associated with complying with Notice 2017-10, and the Plaintiffs cannot stop incurring these costs without risking criminal prosecution unless and until the Court declares Notice 2017-10 unlawful and sets it aside.

153.   There is also no mechanism for Plaintiffs to recover the economic costs associated with the IRS examinations and Tax Court litigations that directly resulted from the filing of Forms 8886 and 8918 in order to comply with Notice 2017-10.

## COUNT ONE

### Violation of the APA's Notice-and-Comment Rulemaking Requirement
### (5 U.S.C. § 553)

154.   Plaintiffs incorporate herein by reference and reallege all allegations in paragraphs 1–153.

155.   The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

156.   The APA also authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

157.   "'[A]gency action' includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

158.   The IRS and Treasury are each an "agency" within the definition of the APA.  5 U.S.C. § 551(1).

159.   Pursuant to the APA, certain "rules" promulgated by an agency must be published in accordance with notice-and-comment procedures.  5 U.S.C. § 553.

160.   "Rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."  5 U.S.C. § 551(4).

161.   Notice 2017-10 is a "rule" within the definition of the APA.  5 U.S.C. § 551(4).

162.   Because Notice 2017-10 is a "rule" under the APA, the IRS was required to issue a notice of proposed rulemaking in advance of its effective date, to allow interested persons an opportunity to make written submissions and comments, to consider those submissions and comments in the final rule and to include in the final rule a "concise general statement of [its] basis and purpose."  5 U.S.C. § 553(c).

163.   The IRS did not comply with the notice-and-comment procedures when it issued Notice 2017-10.

164.   Notice 2017-10 constitutes a legislative rule subject to the APA's notice-and-comment procedures as a matter of law.

165.   Notice 2017-10 is a legislative rule because it has the force and effect of law.

166.   Notice 2017-10 is also a legislative rule because it creates new substantive duties, the violations of which prompt exposure to financial penalties and criminal sanctions.

167.   Notice 2017-10 is not within any of the three narrow exceptions to the notice-and-comment procedures mandated by the APA.

168.   First, Notice 2017-10 is not an interpretive rule under 5 U.S.C. § 553(b)(3)(A).

169.   Second, Notice 2017-10 omits any finding of good cause "that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest" or a "brief statement of reasons therefor."  5 U.S.C. § 553(b)(3)(B).

170.   Third, Congress did not expressly exempt the IRS from notice-and-comment procedures required by the APA.

171.   Notice 2017-10 is unlawful because the IRS and Treasury failed to comply with the notice-and-comment procedures and there is no applicable exception to those requirements.

172.   Compliance with Notice 2017-10 has and will continue to injure Plaintiffs, subjecting them to onerous reporting requirements.

173.   Compliance with Notice 2017-10 has and will continue to injure Plaintiffs, subjecting them to high economic costs associated with complying with onerous reporting requirements and with responding to IRS examinations and Tax Court litigation that directly resulted from the required reporting.

## COUNT TWO

**Violation of the APA's Prohibition on Agency Action that Is Arbitrary, Capricious, an Abuse of Discretion, or Unlawful**
**(5 U.S.C. § 706(2)(A))**

174.   Plaintiffs incorporate herein by reference and reallege all allegations in paragraphs 1–173.

175.   The APA empowers courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

176.   Notice 2017-10 is an agency action subject to review under 5 U.S.C. § 706(2)(A).

177.   Notice 2017-10 violates 5 U.S.C. § 706(2)(A) in numerous ways.

178.   Notice 2017-10 violates Congress's express statutory instructions that "reportable transaction[s]" having "a potential for tax avoidance or evasion" be designated "under regulations."  26 U.S.C. § 6707A(c)(1).

179.   Notice 2017-10 describes a particular type of transaction: one where "[a]n investor receives promotional materials that offer prospective investors in a pass-through entity the possibility of a charitable contribution deduction that equals or exceeds an amount that is two and one-half times the amount of the investor's investment."  2017-4 I.R.B. at 545.  But it also applies to transactions that the IRS determines are "substantially similar" to this description.  The IRS has not provided any guidance on what constitutes a substantially similar transaction, leaving investors and material advisors at

a loss as to determining when the burdens and penalties arising from the designation may begin or end.

180.   Notice 2017-10 does not include any discussion or examination of relevant facts and data supporting its decision to identify syndicated conservation easement transactions as listed transactions.

181.   Notice 2017-10 does not include any discussion or examination of relevant facts and data explaining why the use of a pass-through entity to grant a conservation easement is a tax avoidance transaction.

182.   Notice 2017-10 does not include any discussion or examination of relevant facts and data explaining why the possibility of a charitable contribution deduction that equals or exceeds an amount that is two and one-half times the amount of the investor's investment is a tax avoidance transaction.

183.   Notice 2017-10 provides no definition of the types of "promotional materials" that are sufficient to bring a transaction within the scope of the Notice.  For example, the rule does not distinguish between a widely disseminated offering memorandum and an email between two friends.

184.   In issuing Notice 2017-10, the IRS exceeded the authority delegated to it by Congress by imposing new substantive restrictions on

conservation easements—some of which mirror IRS proposals that Congress considered but rejected months earlier. The IRS failed to consider or address the inconsistency between Notice 2017-10 and Congress's prior rejection or Congress's strong continuing support for expanding the availability of the conservation easement deduction and protecting undeveloped land.

185. In issuing Notice 2017-10, the IRS imposed a retroactive obligation on investors and material advisors, imposing reporting and record-keeping requirements on parties to the subject transactions dating back to January 1, 2010—seven years earlier. It did so without any analysis or explanation justifying this date, let alone the cost of imposing such a long period of retroactivity and the compliance difficulties it created.

186. Indeed, the Notice lacks any supporting evidence, analysis of the need for it, or defense of its particular terms.

187. Some or all of these flaws could have been raised and avoided if the IRS had followed the APA and the statute requiring it to define reportable transactions via regulation, with notice and comment.

188. Compliance with Notice 2017-10 has and will continue to injure Plaintiffs, subjecting them to high economic costs associated with complying with onerous reporting requirements and with responding to IRS examinations and Tax Court litigations that directly resulted from the required reporting.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendant as follows:

  i. That Notice 2017-10 be declared unlawful and set aside as to each of the Plaintiffs and any of their direct or indirect owners;

  ii. That the IRS be ordered to return to Plaintiffs all Forms 8886 and 8918 filed by or on behalf of Plaintiffs or any of their direct or indirect owners;

  iii. That Plaintiffs be awarded their costs of this action; and

  iv. That Plaintiffs be granted such other and further relief as this Court deems appropriate.

Respectfully submitted this 9th day of March 2023.

/s/ *Matthew H. Lembke*
**Matthew H. Lembke**
**Riley A. McDaniel**
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:  (205) 521-8560
Email:  mlembke@bradley.com
   rmcadniel@bradley.com

**OF COUNSEL**

**Michael Todd Welty**
(Motion to be Admitted *pro hac vice* forthcoming)
TODD WELTY, P.C.
4279 Roswell Road N.E
Suite 208, #352
Atlanta, GA 30342
Telephone: (404) 301-4791
Email: todd@toddweltypc.com

**Armando Gomez**
(Motion to be Admitted *pro hac vice* forthcoming)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7868
Email: armando.gomez@skadden.com

**David W. Foster**
(Motion to be Admitted *pro hac vice* forthcoming)
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-3386
Email: david.foster@kirkland.com

*Counsel for Plaintiffs*