FILED

2023 Jul-14  PM 06:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

AGRO HOLDINGS LLC, et al.,

      Plaintiffs,

      v.

UNITED STATES OF AMERICA;
U.S. DEPARTMENT OF TREASURY;
and, INTERNAL REVENUE SERVICE,

      Defendants.

_____/

Case No. 4:23-cv-00287-RDP

OPPOSED MOTION

## UNITED STATES' MOTION TO DISMISS

This case presents a collateral attack on the IRS's assertion of tax liabilities against 62 of the 75 Plaintiffs, even while those liabilities are being litigated in Tax Court. The Anti-Injunction Act deprives the Court of jurisdiction to adjudicate those parties' challenges, so the Court should dismiss them. And this case was filed more than six years after the administrative action at issue, so none of the Plaintiffs can raise a procedural or policy-based facial challenge to the Notice at issue. The Court should dismiss.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    I.    Reportable and Listed Transactions ................................................................ 3

    II.    Issuance of Notice 2017-10 ............................................................................ 4

    III.    Plaintiffs' Involvement in the Listed Transactions Described in Notice 2017-10 ........... 5

    IV.    Assertion of Additional Tax and Penalties Against the PropCo Plaintiffs ..................... 7

ARGUMENT ........................................................................................................... 9

    I.    The PropCo Plaintiffs and Partner Plaintiffs lack Article III standing. ............................... 9

    II.    The PropCo and Partner Plaintiffs' Complaint is barred by the Anti-Injunction Act because the relief requested would restrain the IRS's assessment and collection of tax .......... 12

        A.    The Sixty-Two PropCo Plaintiffs and Six Partner Plaintiffs are "on the cusp of tax liability." ................................................................................. 15

        B.    The "ongoing economic harm" alleged by the PropCo Plaintiffs and Partner Plaintiffs demonstrates that they are attempting to restrain assessment............................... 18

        C.    The PropCo Plaintiffs and Partner Plaintiffs do not face criminal sanctions, and they have alternative forums to raise challenges to Notice 2017-10. ........................... 19

    III.    The statute of limitations bars Plaintiffs' challenges to Notice 2017-10 in Count One and Count Two................................................................................. 20

        A.    Count One's procedural challenges are time-barred by section 2401(a)................... 21

        B.    Count Two is time-barred by section 2401(a) because it consists of policy-based facial challenges to Notice 2017-10........................................................ 22

CONCLUSION ...................................................................................................... 24

CERTIFICATION OF CONFERRAL ................................................................... 25

REQUEST FOR ORAL ARGUMENTS ................................................................ 25

## Table of Authorities

Page(s)

**Cases**

*Alabama v. PCI Gaming Auth.*,
801 F.3d 1278 (11th Cir. 2015) ..................................................................21

*Alabama v. Shalala*,
124 F. Supp. 2d 1250 (M.D. Ala. 2010) ......................................................22

*Alexander v. Americans United Inc.*,
416 U.S. 752 (1974) .....................................................................................15

*Brown v. Massachusetts*,
487 U.S. 879 (1988) .....................................................................................21

*CIC Servs., LLC v. Internal Revenue Serv.*,
593 U.S. ___, 141 S. Ct. 1582 (2021) ............................................... *passim*

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......................................................................................10

*Ctr. for Biological Diversity v. Hamilton*,
453 F.3d 1331 (11th Cir. 2006) (per curiam) ..............................................22

*Dickens v. United States*,
671 F.2d 969 (6th Cir. 1982) .......................................................................19

*Dunn-McCampbell Royalty Interest v. Nat'l Park Serv.*,
112 F.3d 1283 (5th Cir. 1997) ...............................................................22, 24

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006) ..............................................................10, 13

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
266 F. Supp. 2d 1101 (N.D. Cal. 2003) ......................................................24

*Florida Keys Citizens Coalition v. West*,
996 F. Supp. 1254 (S.D. Fla. 1998) .............................................................24

*Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .....................................................................................10

*Gaetano v. United States*,
942 F.3d 727 (6th Cir. 2019) .......................................................................19

*Govig & Assocs. v. United States*,
  2023 U.S. Dist. LEXIS 49700 (D. Ariz., Mar. 22, 2023) ...................................................23, 24

*Green Valley Investors, LLC v. Commissioner*,
  159 T.C. No. 5, 2022 U.S. Tax Ct. LEXIS 643 .....................................................................21

*Hancock County Land Acquisitions v. United States*,
  553 F. Supp. 3d 1284 (N.D. Ga. 2021), *aff'd*, 2022 U.S. App. LEXIS 22850
  (11th Cir. Ga., Aug. 17, 2022), *cert. denied*, 143 S.Ct. 577 (2023)............................14, 17, 18

*Hire Order Ltd. v. Marianos*,
  698 F.3d 168 (4th Cir. 2012) ..............................................................................................22

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)..............................................................................................................10

*JEM Broadcasting Co., Inc. v. FCC*,
  22 F.3d 320 (D.C. Cir. 1994)...............................................................................................23

*Kelly v. Harris*,
  331 F.3d 817 (11th Cir. 2003) .............................................................................................10

*Kemlon Prods. & Dev. Co. v. United States*,
  638 F.2d 1315 (5th Cir. 1981), *modified on other grounds*, 646 F.2d 223 (5th
  Cir. 1981) ..............................................................................................................................14

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
  751 F.3d 629 (D.C. Cir. 2014) .............................................................................................13

*Lowrie v. United States*,
  824 F.2d 827 (10th Cir. 1987) .............................................................................................19

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992)........................................................................................................10, 13

*Mobile Republican Assembly v. United States*,
  353 F.3d 1357 (11th Cir. 2003) ...........................................................................................14

*N.D. Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  55 F.4th 634 (8th Cir. 2022) ................................................................................................25

*Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*,
  567 U.S. 519 (2012)..............................................................................................................14

*Preminger v. Sec'y of Veterans Affairs*,
  517 F.3d 1299 (Fed. Cir. 2008).................................................................................22, 23, 24

*Rodriguez v. United States*,
    852 F.3d 67 (1st Cir. 2017)................................................................22

*Shiny Rock Mining Corp. v. United States*,
    906 F.2d 1362 (9th Cir. 1990) ..........................................................21

*Sierra Club v. Slater*,
    120 F.3d 623 (6th Cir. 1997) ............................................................22

*Tot Prop. Holdings, LLC v. Commissioner*,
    1 F.4th 1354 (11th Cir. 2021) .............................................................5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................11

*United States v. Woods*,
    571 U.S. 31 (2013).............................................................................7

*In re Walter Energy, Inc.*,
    911 F.3d 1121 (11th Cir. 2018) ........................................................14

*Wind River Min. Corp. v. United States*,
    946 F.2d 710 (9th Cir. 1991) ......................................................22, 23

*Wong v. Doar*,
    571 F.3d 247 (2d Cir. 2009)..............................................................22

**Statutes**

26 U.S.C. § 6662A ........................................................................ *passim*

28 U.S.C. § 2401(a) ...................................................................... *passim*

Anti-Injunction Act, IRC § 7421(a) .............................................. *passim*

BBA ........................................................................................8, 9, 17, 18

Bipartisan Budget Act of 2015 ...............................................................8

Declaratory Judgment Act, 28 U.S.C. § 2201..................................2, 14

Internal Revenue Code §§ 6111 and 6112 ..........................................1, 5

IRC § 170 ...............................................................................................6

IRC § 170(b)(1)(E), (h) ..........................................................................4

IRC § 701 ...............................................................................................7

IRC §§ 702, 704 ........................................................................................................7

IRC § 6011 .............................................................................................................5, 9

IRC §§ 6011 and 6111 .............................................................................................4

IRC § 6011(a) ...........................................................................................................3

IRC § 6031(a) ...........................................................................................................7

IRC § 6221 ..............................................................................................................17

IRC § 6221(a) (2017) ..............................................................................................7

IRC § 6223(d)(2) (2017) ..........................................................................................7

IRC § 6225(a) (2017) .............................................................................................17

IRC § 6225(a), (b) ....................................................................................................8

IRC § 6226 ...............................................................................................................8

IRC § 6226(a), (b) (2017) ........................................................................................7

IRC § 6229(a), (d) (2017) ........................................................................................7

IRC § 6231(a)(3) ......................................................................................................8

IRC § 6232(b) .........................................................................................................18

IRC § 6233 ...........................................................................................................7, 8

IRC § 6234(a)(3) ......................................................................................................8

IRC § 6662A(a) and (b) ...........................................................................................8

IRC §§ 6662A(c), 6664(d)(3)(A) ............................................................................9

IRC § 6665 ..............................................................................................................14

IRC § 6665(a) ...........................................................................................................2

IRC § 6707A .............................................................................................................4

IRC § 6707A(c)(1) ..................................................................................................24

IRC § § 6231(a)(7) (2017) .......................................................................................6

Pub. L. No. 114-74 § 1101(a), 129 Stat. 584, 614 .................................................8

Tax Equity and Fiscal Responsibility Act, Pub. L. No. 97-248, 96 Stat. 648 ...................... *passim*

**Other Authorities**

65 Fed. Reg. 11205-02 (March 2, 2000)...................................................................................3

65 Fed. Reg. 11269-01 (March 2, 2000)...................................................................................3

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................10

Fed. R. Civ. P. 12(b)(1)....................................................................................................3, 26

Form 8886, *Reportable Transaction Disclosure Statement*....................................................4, 11

Form 8918, *Material Advisor Disclosure Statement* ................................................................4

Forms 8919, Treasury Regulation § 301.6112-1(b)................................................................12

Notice 2017-10, 2017-4 I.R. ...................................................................................................1

Treas., *The Problem of Corporate Tax Shelters* (July 1999)........................................................3

Treas. Reg. §§ 1.6011-4, 301.6111-3......................................................................................4

Treas. Reg. § 1.6011-4(b)(2)...............................................................................................1, 5

Treas. Reg. § 1.6011-4(e)(1)....................................................................................................4

Treas. Reg. § 1.6011-4I(3)(i)(A)............................................................................................11

Treas. Reg. § 301.6111-3(e) ...............................................................................................4, 11

Treas. Reg. § 301.6112-1 ........................................................................................................4

Treasury Regulation § 1.6011-4 ..........................................................................................1, 5

Treasury Regulation § 301.6112-1(b)(3) ...............................................................................12

## INTRODUCTION

In Notice 2017-10, 2017-4 I.R.B 544, the IRS identified certain syndicated conservation easement transactions as listed transactions for purposes of section 1.6011-4(b)(2) of the Income Tax Regulations and sections 6111 and 6112 of the Internal Revenue Code. Listed transactions are subject to increased scrutiny due to their propensity to facilitate tax avoidance. In the transactions identified by Notice 2017-10, promoters orchestrate the improper sale of inflated tax deductions to investors under the guise of charitable donations, often by using appraisals giving unrealistic valuations of undeveloped land. Because participants in listed transactions must disclose their participation under Treasury Regulation § 1.6011-4, and material advisors must disclose their involvement under section 6111, the IRS can better gather information on the transactions and unravel those that are abusive.

Here, 62 of the 75 Plaintiffs participated in transactions described by Notice 2017-10 by acquiring real property and donating a conservation easement, a fee interest, or both (the "PropCo Plaintiffs"). *See* ECF No. 12 (Am. Compl.) ¶¶ 12-73, 99-103. Six of the remaining Plaintiffs held direct or indirect interests in certain PropCo Plaintiffs (the "Partner Plaintiffs"). *See id.* ¶¶ 76, 78-80, 81, 86. One serves as a partnership representative. *Id.* ¶ 83. The remaining six performed services in connection with the transactions (the "Material Advisor Plaintiffs"). *See id.* ¶¶ 74, 75, 77, 82, 84, 85. The IRS adjusted the deductions claimed by the PropCo Plaintiffs and asserted that reportable transaction understatement penalties apply pursuant to 26 U.S.C. ("IRC") § 6662A. Each PropCo Plaintiff filed a Tax Court petition. With challenges to deductions and penalties for some years pending in Tax Court, and the assessment of additional tax and penalties for those years looming, the PropCo Plaintiffs seek to circumvent the process

by asking this Court to "set aside" Notice 2017-10 and require the IRS to give up documents that support its position in those cases. Such drastic relief is barred.[1]

To begin with, the Court lacks jurisdiction to hear the PropCo Plaintiffs' and Partner Plaintiffs' claims for two reasons. First, those Plaintiffs lack standing to bring this suit. Many of the purported injuries alleged in the Amended Complaint are *past* harms that cannot be remedied by setting aside Notice 2017-10 or requiring the IRS to return forms submitted pursuant to the Notice. Those Plaintiffs have not alleged any *future* compliance costs which they will be forced to bear due to Notice 2017-10, a necessity for standing to seek injunctive relief.

Second, the Anti-Injunction Act ("AIA"), IRC § 7421, and the tax exception to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), prohibit the relief the PropCo and Partner Plaintiffs seek. These provisions bar suits that would have the purpose or effect of restraining the IRS from assessing taxes or from taking actions necessary to assess taxes. That includes the § 6662A penalty, which the Code treats as a tax. *See* IRC § 6665(a). The tax consequences flowing from the Notice for those Plaintiffs are imminent because the IRS has already denied the deductions claimed by the PropCo Plaintiffs and asserted understatement penalties against them. Those adjustments will flow through to the Partner Plaintiffs (unless certain PropCo Plaintiffs remain liable themselves). Setting aside Notice 2017-10 and requiring the IRS to return the information serving as the basis for its impending assessments would restrain the IRS's ability to assess and collect those taxes. Such relief is barred by the AIA.

---

[1] To summarize the 62 Tax Court cases brought by the PropCo Plaintiffs, the United States has attached an index as Exhibit A, categorizing the type of plaintiff, the year of the transaction, the governing partnership law, and the Tax Court docket number. The PropCo Plaintiffs are challenging the IRS's assertion of the section 6662A penalty in each Tax Court case. The United States has included two Tax Court petitions (Exhibits B and C) to illustrate the adjustments at issue, including the asserted penalties.

In addition to the jurisdictional shortcomings, Plaintiffs' claims face another flaw: this suit is not timely. Plaintiffs missed their window to bring the facial attacks on Notice 2017-10 alleged in Counts One and Two because they filed the suit after the statute of limitations lapsed. The statute of limitations for civil actions in 28 U.S.C. § 2401(a) applies to APA challenges. Under section 2401(a), a claim must be brought within six years from when the right of action first accrues. Because Counts One and Two assert procedural and policy-based challenges that could have been filed at any time, the right of action accrued on January 23, 2017, when the IRS published Notice 2017-10 in the Internal Revenue Bulletin. Plaintiffs' claims in the first two Counts are thus time-barred.

Accordingly, the Court should dismiss the PropCo and Partner Plaintiffs pursuant to Fed. R. Civ. P. 12(b)(1) because they lack standing and because the AIA bars the Court's jurisdiction over their claims. The Court should also dismiss Counts One and Two as to all Plaintiffs because the claims raised are time-barred.

## BACKGROUND

### I.    Reportable and Listed Transactions

By 2000, Treasury had unsuccessfully fought the swift-moving tax shelter industry for years. *See, e.g.*, U.S. Dep't of the Treas., *The Problem of Corporate Tax Shelters*, 59-60 (July 1999). These abusive transactions resulted in huge tax revenue loss, raising the tax burden on other taxpayers and breeding disrespect for the tax system—both by the people who participate in the tax shelter market and by law-abiding taxpayers who saw others not paying their fair share. *Id*. Using its authority under IRC § 6011(a), which allows it to prescribe the information contained on returns and statements, Treasury issued a regulation requiring taxpayers to disclose their participation in "reportable transactions," i.e., transactions that the IRS has identified as potentially abusive. Taxpayers must also disclose a subset of those known as "listed

transactions," which the IRS has determined to be abusive tax avoidance transactions. 65 Fed. Reg. 11205-02 (March 2, 2000); 65 Fed. Reg. 11269-01 (March 2, 2000). From the start, the IRS has almost always identified each new listed transaction by publishing guidance in the Internal Revenue Bulletin describing the transaction in detail, typically in the form of a notice.

Regulations issued under IRC §§ 6011 and 6111 require a participant in a reportable transaction, and a material advisor with respect to a reportable transaction, to file certain disclosure forms. Treas. Reg. §§ 1.6011-4, 301.6111-3. Participants must file a Form 8886, *Reportable Transaction Disclosure Statement*, for each transaction they participated in with their return for the year of their participation. Treas. Reg. § 1.6011-4(e)(1). Material advisors to any reportable transaction must disclose certain information about the transaction to the IRS by filing a Form 8918, *Material Advisor Disclosure Statement*, by the last day of the month that follows the end of the calendar quarter in which the advisor became a material advisor with respect to the reportable transaction. Treas. Reg. § 301.6111-3(e). Material advisors of reportable transactions must also prepare and maintain a list of information related to the transaction, including the identities of the participants they have advised, and provide that list to the IRS upon request. Treas. Reg. § 301.6112-1. Participants and material advisors who flout the disclosure requirements are subject to a penalty under IRC § 6707A, including an enhanced penalty for non-disclosure of a listed transaction.

## II.    Issuance of Notice 2017-10

Taxpayers who protect land in perpetuity by donating a qualifying conservation easement can claim a federal income tax deduction. IRC § 170(b)(1)(E), (h). Although the tax deduction for conservation easement donations exists for a noble purpose, syndicated conservation easement schemes exploit and abuse it. Under these schemes, a promoter typically markets and sells ownership interests in a tract of land or certified historic structure to wealthy investors with

4

the claim that the investors will receive tax deductions far greater than the amount of their contributions. The promoters "syndicate" the investors' ownership interests through a partnership or other pass-through entity created to hold title to the land on which the conservation easement is to be donated. The promoters obtain an appraisal that inflates the property's value far beyond the price paid by the investors, based on unreasonable factual assumptions and conclusions about the development potential of the property. The entity then donates a conservation easement on the land. The resulting charitable deduction, representing the difference between the inflated appraisal and the reduced value of the encumbered property, passes through the entity to be allocated among the entity's investors. This results in exaggerated tax benefits to the investors that are worth significantly more than the investors' initial investments. *See Tot Prop. Holdings, LLC v. Commissioner*, 1 F.4th 1354 (11th Cir. 2021).

The IRS determined that it needed to gather information about these transactions to identify them more quickly and to better direct its enforcement efforts. As described in Notice 2017-10, the IRS "bec[ame] aware that some promoters are syndicating conservation easement transactions that purport to give investors the opportunity to claim charitable contribution deductions in amounts that significantly exceed the amount invested." Notice 2017-10 announced the IRS's "inten[t] to challenge the purported tax benefits from this transaction based on the overvaluation of the conservation easement," and identified the transaction as a listed transaction for purposes of Treas. Reg. § 1.6011-4(b)(2). *Id*. Accordingly, there are disclosure obligations for participants in these transactions, *see* IRC § 6011; Treas. Reg § 1.6011-4, as well as disclosure and list maintenance obligations for material advisors, IRC §§ 6111 and 6112.

III.     **Plaintiffs' Involvement in the Listed Transactions Described in Notice 2017-10**

Plaintiffs consist of 75 entities impacted by Notice 2017-10 in several different ways. As alleged by Plaintiffs, the first 62 plaintiffs—the PropCo Plaintiffs—are Alabama LLCs classified

as partnerships for federal tax purposes, each with a principal place of business in Alabama, and each of which held real property in Alabama. ECF No. 12 ("Am. Compl.") ¶ 99. All but three of these 62 entities contributed conservation easements on their real property. The remaining three, Agro, Greenview, and Threshing Stone, contributed fee simple interests. *Id*. ¶ 101. Each reported a deduction under IRC § 170 for its contribution. *Id*. ¶¶ 101, 103.

According to the Amended Complaint, each PropCo Plaintiff has "multiple . . . investors" who understood that the return on their investment could come in the form of a tax deduction for a charitable contribution. *Id*. ¶ 100. Each PropCo Plaintiff filed a Form 8886 with its tax return to disclose its participation in a conservation easement transaction in that tax year. *Id*. ¶ 147.

The Amended Complaint lacks any description of any of the transactions the PropCo Plaintiffs participated in and reported on Form 8886, or how Notice 2017-10 applied to the transactions. Presumably, however, the PropCo Plaintiffs' "investors" received promotional materials offering a charitable contribution deduction of more than two and a half times the amount of the "investment." *See* Notice 2017-10, § 2. The Amended Complaint does not include details about the number of investors, the amount of the investments, or the resulting deductions claimed. It does not claim that any Plaintiff received fees for its part in the transactions.

Of the remaining 13 plaintiffs, six, referred to in this Motion as the "Partner Plaintiffs," hold direct or indirect interests in certain PropCo Plaintiffs. *Id*. ¶¶ 76, 78, 79, 80, 81, 86.[2] As interest holders, the Partner Plaintiffs will generally recognize tax benefits or consequences from the transactions and the examinations (unless the PropCo Plaintiff is directly liable for

_____

[2] GH Manager LLC and Ornstein-Schuler LLC are tax matters partners for certain entities. (Am. Compl. ¶¶ 78-81.) They therefore are partners in those entities. *See* IRC § § 6231(a)(7) (2017). Because all six Partner Plaintiffs are LLCs, they may also be pass-through entities for individual "investors" in the Notice 2017-10 transactions.

adjustments). Of the remaining six, one serves as a partnership representative. *Id.* ¶ 83. Four

more allege that they completed "assessments" of property held by PropCo Plaintiffs and

provided services with respect to transactions involving property held by certain contributor

plaintiffs. *Id.* ¶¶ 74, 75, 77, 84. The final two allege that they identified and engaged legal and

other advisors to provide services to certain PropCo Plaintiffs, including tax return preparation.

*Id.* ¶¶ 82, 85. These last six are described as the "Material Advisor Plaintiffs."

## IV.   Assertion of Additional Tax and Penalties Against the PropCo Plaintiffs

All 62 of the PropCo Plaintiffs have elected to be treated as partnerships for federal

income tax purposes. Am. Compl. ¶ 99. A partnership does not pay federal income taxes. IRC

§ 701. Instead, a partnership must report its tax items on an information return, IRC § 6031(a),

and the partners must report their distributive shares of the partnership's tax items on their own

individual tax returns. *See* IRC §§ 702, 704. When the IRS examines a partnership's return, it

makes adjustments at the partnership level, rather than to each individual partner's return. *See*

IRC § 6221(a) (2017); IRC § 6221(a). Those adjustments include whether penalties apply. *See*

IRC § 6233; *United States v. Woods*, 571 U.S. 31, 41-42 (2013).[3]

---

[3] Beyond these fundamentals, two different partnership procedural regimes govern the PropCo Plaintiffs. Forty-five of PropCo Plaintiffs are governed by the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 648. Under the TEFRA rules, the IRS issues a Notice of Final Partnership Administrative Adjustment, IRC § 6223(d)(2) (2017), and partners can petition the Tax Court, a district court, or the Court of Federal Claims for a readjustment, *see* IRC § 6226(a), (b) (2017). When adjustments become final, either after the readjustment case or because no petition was timely filed, the IRS makes conforming assessments against the partners. *See* IRC § 6229(a), (d) (2017).

The other 17 PropCo Plaintiffs are governed by statutes enacted in the Bipartisan Budget Act of 2015 ("BBA"), with which Congress replaced TEFRA's rules for partnership tax years

(continued...)

Here, because each of the PropCo Plaintiffs is a partnership, any tax benefits for the claimed conservation easement donations would flow through to their partners, including the Partner Plaintiffs and any ultimate "investors." The IRS examined each of the PropCo Plaintiff's tax returns, focusing on the transactions reported on Forms 8918 and Form 8886. Am. Compl. ¶ 149. The IRS disallowed the deductions claimed by the PropCo Plaintiffs on their tax returns for their conservation easement donations, in whole or part, and issued final partnership adjustments reflecting the IRS's adjustments for additional tax owed. Ex. B at 36, 37, Ex. C at 59.

Further, the IRS has asserted reportable transaction understatement penalties under section 6662A against each of the PropCo Plaintiffs. Ex. B at 36, 37, Ex. C at 59. The statute defines a reportable transaction understatement as an understatement attributable to any listed transaction. IRC § 6662A(a), (b)(2)(A). Section 6662A(a) imposes a 20% penalty on reportable transaction understatements, which is increased to 30% if the taxpayer has not complied with the reportable transaction disclosure rules under section 6011. IRC §§ 6662A(c), 6664(d)(3)(A). Because Notice 2017-10 designates certain syndicated conservation easement transactions as

---

beginning after 2017. *See* BBA § 1101(a), Pub. L. No. 114-74, 129 Stat. 584, 614. Under the BBA rules, the IRS issues a Notice of Final Partnership Adjustment, IRC § 6231(a)(3), and the partnership (rather than a partner) can file a petition for readjustment, *see* IRC § 6234(a)(3). When adjustments become final, though, the *partnership* is presumptively liable for the "imputed underpayment"—the net changes at the partnership level, taxed at the highest income tax rate for that year. IRC § 6225(a), (b). The imputed underpayment includes penalties and interest. IRC § 6233. BBA partnerships can "push out" the imputed underpayment to their partners, making the partners liable instead. IRC § 6226.

The differences between TEFRA and BBA do not substantially affect the issues in this Motion. When necessary to distinguish between the TEFRA and BBA statutes, the United States has added "(2017)" to indicate that the statute was in effect that year, the last year of TEFRA. It has also added hyperlinks for the TEFRA statutes for the Court's convenience. The Motion refers to "final partnership adjustment" to mean the final adjustments under both statutes.

listed transactions, participants of transactions described in the Notice are subject to the reportable transaction understatement penalty under section 6662A.

Each of the 62 PropCo Plaintiffs is currently seeking judicial review of the IRS's adjustments, including penalties, in Tax Court. *See* Ex. A. For the TEFRA PropCo Plaintiffs, if the IRS prevails in Tax Court, those adjustments will flow through to their partners, including the Partner Plaintiffs. If the IRS prevails against the BBA PropCo Plaintiffs, those partnerships will either have to pay the imputed underpayment or push the adjustments out to their partners.

## ARGUMENT

I.   **The PropCo Plaintiffs and Partner Plaintiffs lack Article III standing.**

The "irreducible minimum necessary" to meet Article III's case-or-controversy requirement is that a plaintiff have standing. *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003). To establish standing, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the sought-after remedy cannot redress the alleged harm, an essential element of standing is lacking. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff has the burden of establishing that it has standing at the time it files suit and at all future stages of the litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 704-05 (2013). And a plaintiff must demonstrate standing separately for each form of relief it seeks. *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

When parties seek injunctive relief, they must show the threat of a *future* injury as the result of the defendant's actions to obtain such a drastic remedy. Allegations of past harm are not enough to establish standing to seek injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Elend v. Basham*, 471 F.3d 1199, 1207-08 (11th Cir. 2006) (injunctions can rectify ongoing or future harm but cannot redress past harm; plaintiff who cannot show

"continuing, present adverse effects" or "a real and immediate threat of future harm" lacks standing to obtain injunctive relief).

Here, the Amended Complaint does not contain sufficient factual allegations to show that the PropCo Plaintiffs and Partner Plaintiffs have standing to bring this suit. Those Plaintiffs allege two injuries, of which the first is the costs of complying with reportable transaction disclosure requirements. But the Amended Complaint does not plausibly claim the PropCo and Partner Plaintiffs will face *future* compliance costs as a result of Notice 2017-10. A taxpayer must file a Form 8886, *Reportable Transaction Disclosure Statement*, if its return reflects the tax consequences of a listed transaction or it has tax benefits from a listed transaction. *See* Treas. Reg. § 1.6011-4I(3)(i)(A). For Notice 2017-10, participants must disclose the transaction "for each taxable year in which the taxpayer participated in the transactions." Notice 2017-10, § 3. But each of the Plaintiffs already filed, "with its timely filed tax return," a Form 8886 for the year in which it "participated in transactions purportedly described in Notice 2017-10." Am. Compl. ¶ 147. The PropCo and Partner Plaintiffs nowhere allege that they must file another Form 8886 with their return for a future "taxable year." Nor do they allege that they have concrete plans to participate in Notice 2017-10 transactions again, which would prompt new filing obligations. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (holding that a risk of future harm can satisfy the concrete-harm requirement in a suit for injunctive relief, but only if "the risk of harm is sufficiently imminent and substantial").

The Plaintiffs allege that they may be considered material advisors, not just participants to transactions, because they "may have provided material aid by being a flow-through entity that acquired real estate and entitled its members to several investment strategies" including the "potential donation of a conservation easement." Am. Compl. ¶ 142. But the PropCo Plaintiffs

10

do not allege that they received a fee for their services, a necessary element to be considered a material advisor. Even if the PropCo and Partner Plaintiffs can be considered material advisors, they have not alleged any future injury to create standing. Under Treasury Regulation § 301.6111-3(e), material advisors generally only file Form 8918 once, and those Plaintiffs admit in the Amended Complaint that they have already done so. *See* Am. Compl. ¶ 148. Under section 301.6111-3(d), a material advisor need only file a second disclosure if facts materially change. Plaintiffs have not alleged there have been any material changes.

In addition to filing Form 8919, Treasury Regulation § 301.6112-1(b) requires material advisors to maintain a list identifying each person to whom they have acted as a material advisor. Treasury Regulation § 301.6112-1(b)(3) describes the contents of the list, which include tax analyses or opinions, relating to each reportable transaction that are material to an understanding of the purported tax treatment or tax structure of the transaction that have been shown or provided to any person who acquired or may acquire an interest in the transactions, or to their representatives, tax advisors, or agents. For the PropCo and Partner Plaintiffs, these files are more likely than not already in their possession and are likely routine business information they maintain. *See CIC Services*, 141 S. Ct. at 1594 (Sotomayor, J., concurring) ("Such information, after all, is about those taxpayers' own activities and is likely to be in their possession."). Further, as each PropCo plaintiff is currently in Tax Court litigation over the validity of the conservation easement deductions, and would be expected to maintain the information through the course of the litigation. Thus, setting aside Notice 2017-10 will not redress any future harm the PropCo Plaintiffs may suffer in their role as material advisors.

The second category of "harm" the PropCo and Partner Plaintiffs purportedly suffered is even less cognizable as an injury that would create standing for this suit. After the PropCo

Plaintiffs' returns were selected for audit, Am. Compl. ¶ 149, the Plaintiffs had to turn over

documents, *id.* ¶ 150, and incur costs related to the audits and Tax Court litigation, *id.* ¶¶ 149,

151. But the prospective relief the Plaintiffs seek, including return of the documents, will not

reimburse the costs they have already incurred. *See Elend*, 471 F.3d at 1207-08. Nor will it

prevent them from incurring more litigation costs in the future: the IRS will remain free to

litigate whether the PropCo Plaintiffs were entitled to the deductions they claimed. Thus, the

PropCo and Partner Plaintiffs' "litigation cost" injury would likely not be redressed by a decision

in their favor. *See Lujan*, 504 U.S. at 569-71 (examining redressability prong of standing

inquiry). Nor is it even possible for the Court to prevent them from incurring future examination

or litigation costs. To do so would require restraining the IRS from continuing its examinations

or litigation—relief that is squarely barred by the Anti-Injunction Act, IRC § 7421(a). Indeed, for

the reasons below, the Anti-Injunction Act bars this suit for all of the PropCo and Partner

Plaintiffs.

## II.   **The PropCo and Partner Plaintiffs' Complaint is barred by the Anti-Injunction Act because the relief requested would restrain the IRS's assessment and collection of tax.**

Plaintiffs' challenge targets more than just the reporting requirements flowing from

Notice 2017-10. The Amended Complaint requests relief that would shield the PropCo and

Partner Plaintiffs from the tax consequences flowing from their participation in transactions

covered by Notice 2017-10. Such relief is barred by the Anti-Injunction Act (AIA).

The AIA "protects the [Federal] Government's ability to collect a consistent stream of

revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Nat'l Fed'n*

*of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519, 543 (2012). "When the [AIA] applies, it

deprives federal courts of jurisdiction." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1136 (11th Cir.

2018). With exceptions not applicable here, the AIA provides that "no suit for the purpose of

restraining the assessment or collection of any tax shall be maintained in any court by any person." IRC § 7421(a). The Code treats the section 6662A reportable transaction understatement penalty as a "tax." *See* IRC § 6665. The statute's sweeping language bars not only suits brought for the express purpose of restraining assessment or collection, but also those directed at the means by which the IRS achieves those ends. *Hancock County Land Acquisitions v. United States,* 553 F. Supp. 3d 1284, 1296 (N.D. Ga. 2021), *aff'd*, 2022 U.S. App. LEXIS 22850 (11th Cir. Ga., Aug. 17, 2022), *cert. denied*, 143 S.Ct. 577 (2023); *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir. 1981), *modified on other grounds*, 646 F.2d 223 (5th Cir. 1981).

Likewise, the Declaratory Judgment Act (DJA) provides that a Court "may declare the rights and other legal relations of any interested party seeking" a declaration "except with respect to Federal taxes." 28 U.S.C. § 2201. The DJA's tax exception is "at least as broad" as the AIA. *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1362 n.6 (11th Cir. 2003)

To determine whether the suit seeks to restrain the assessment or collection of taxes, the Court looks "not into a taxpayer's subjective motive, but into the action's objective aim— essentially, the relief the suit requests." *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. ___, 141 S. Ct. 1582, 1589 (2021). The AIA "kicks in" when the target of a requested injunction is a tax obligation or when the relief "runs against" the collection or assessment of a tax. *Id.* at 1590. In *CIC Services*, a material advisor sued to enjoin the enforcement of an IRS listing notice, which identified certain insurance arrangements as "transactions of interest" that needed to be affirmatively reported to the IRS. The Supreme Court considered whether the suit was barred by the AIA. *Id.* at 1588. The Court first looked to the face of the complaint and determined that it did not facially seek to enjoin collection or assessment of a tax. The Court then looked to three

factors to determine whether the suit was "a tax action in disguise," and concluded that the purpose of the advisor's suit was not to restrain assessment. First, the IRS notice "impose[d] affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty." Second, the advisor stood "nowhere near the cusp of tax liability," where the "reporting rule and the statutory tax penalty are several steps removed from each other." Third, even if the tax penalty were enjoined, the advisor would remain subject to the reporting requirement, with any violation "punishable … by separate criminal penalties." *Id.* at 1590-92.

Here, those factors compel the opposite result. The relief requested in the Amended Complaint directly runs against the IRS's assessment of taxes and penalties against the PropCo Plaintiffs instead of just tangential reporting requirements. Of the 75 Plaintiffs in this case, 62 are currently litigating the IRS's denial of their section 170(h) deductions for donations of conservation easements in Tax Court as the result of the information reported because of Notice 2017-10, and the IRS has asserted section 6662A reportable transaction understatement penalties against them. *See* Exs. A, B, C. Those adjustments will be passed on to the PropCo Plaintiffs' partners, including the Partner Plaintiffs. That means the tax liabilities of the PropCo Plaintiffs' ultimate owners is at stake; the relief the Plaintiffs seek would restrain its assessment. That violates the AIA. *See Alexander v. Americans United Inc.*, 416 U.S. 752, 760-61 (1974).

The Supreme Court emphasized that CIC Services' suit fell outside the AIA because it "contest[ed], and s[ought] relief from," a legal mandate separate from any tax. If the suit had been a "run-of-the-mine suit[ ]" that preemptively sought to foreclose tax liability, the AIA would have barred pre-enforcement review. In such a case, the taxpayer's "sole recourse" would have been to follow the usual channels to challenge a tax liability. *Id.* at 1593. Here, the PropCo

and Partner Plaintiffs not only have the option of another forum, they are actively employing it as this case goes forward.

Thus, the PropCo and Partner Plaintiffs' challenge to Notice 2017-10 is barred by the Anti-Injunction Act.

### A. The Sixty-Two PropCo Plaintiffs and Six Partner Plaintiffs are "on the cusp of tax liability."

In 62 separate suits in Tax Court, the PropCo Plaintiffs are litigating the IRS's proposed adjustments to their conservation easement donation deductions and whether penalties apply because they participated in listed transactions. *See* Am. Compl. ¶ 151; Ex. A. That fact alone distinguishes this case from *CIC Services* and establishes that the AIA bars the relief the PropCo Plaintiffs and Partner Plaintiffs seek.

In *CIC Services*, the Supreme Court highlighted the degree of separation between the challenged reporting requirement and the downstream tax penalty. The material advisor brought suit before it was required to report anything and did not immediately face tax penalties for violating the reporting requirements. The Supreme Court found that the information-reporting requirements set forth in the notice at issue were "several steps removed" from the assessment of tax. 141 S. Ct. at 1591 ("Between the upstream Notice and the downstream tax, the river runs long."). Because the ultimate tax consequences flowing from the Notice were attenuated from the reporting requirement challenged in CIC Service's complaint, the Supreme Court held that the suit was not barred by the AIA. *Id.* at 1591-92.

Here, in contrast, the tax consequences flowing from Notice 2017-10 for the PropCo Plaintiffs and Partner Plaintiffs are an immediate destination on that river. *See id.* at 1594 (Sotomayor, J, concurring) (noting that "the answer might be different" if the plaintiff was a taxpayer instead of a tax advisor). Although Plaintiffs say that they are only seeking to set aside

15

Notice 2017-10 and secure the return of their documents filed in compliance with the Notice, the Amended Complaint itself emphasizes the consequences that flow from the reporting, including the Plaintiffs' ongoing Tax Court litigation. Indeed, Plaintiffs themselves tie the reporting to the assessment of tax: "*subsequent to filing Forms 8918 and 8886*, each PropCo Plaintiff's tax return was selected by the IRS for examination. The IRS's examination plans focused on the transactions reported on Forms 8918 and 8886." Am. Compl. ¶ 149 (emphasis added).

The IRS denied, in whole or part, deductions claimed by the PropCo Plaintiffs. It has issued final partnership adjustments to each of them. *See, e.g.*, Exs. B, C. Issuing a final partnership adjustment is a "necessary step" in the IRS's process of assessment of taxes for partnership items. *Hancock*, 553 F. Supp. 3d at 1291 (addressing TEFRA adjustments); *see also* IRC § 6221 (determination of items at partnership level for BBA cases). And as the law permits, each of the PropCo Plaintiffs is currently challenging the IRS's adjustments in Tax Court. Ex. A. After those challenges are resolved, the IRS can assess any resulting underpayments of tax at the ultimate partner level (for the TEFRA partnerships) or assess an imputed underpayment at the partnership level (for the BBA partnerships). *See* IRC § 6225(a) (2017) (TEFRA partnerships); IRC § 6232(b) (BBA).

Additionally, enjoining Notice 2017-10 would necessarily enjoin the assessment of section 6662A penalties. The section 6662A penalty is an accuracy-related penalty on any tax understatements resulting from participation in a reportable transaction. The IRS has asserted the penalty against each of the PropCo Plaintiffs. Setting aside Notice 2017-10—as Plaintiffs request—would prevent the IRS from assessing and collecting the section 6662A penalties because the syndicated conservation easement transactions identified in Notice 2017-10 would no longer be listed transactions. Thus, the relief requested would directly "run against"

immediately pending penalty assessments, placing it within the scope of the AIA's restraint on suit. *CIC Services*, 141 S. Ct. at 1591.

Thus, unlike *CIC Services*, the PropCo Plaintiffs and Partner Plaintiffs' challenge to Notice 2017-10 implicates more than just its upstream reporting obligations—it seeks to block a tax assessment. This case is more like the Eleventh Circuit's decision in *Hancock County Land Acquisitions, LLC v. United States*, which was decided after *CIC Services*. 2022 U.S. App. LEXIS 22850 (11th Cir. Aug. 17, 2022). There, the 11th Circuit held that the AIA barred a suit challenging the issuance of a final partnership administrative adjustment (FPAA). The FPAA, which had already been issued, determined that Hancock improperly claimed a deduction on its 2016 tax return, resulting in an underpayment of taxes. Because Hancock's lawsuit sought to restrain the IRS from assessing and collecting the taxes which would result from the determinations in the FPAA, the court determined it was barred by the AIA. *Id.* at *5-*6. Here, the impending tax consequences for the PropCo Plaintiffs and Partner Plaintiffs similarly reveal the suit's purpose to enjoin the assessment and collection of tax.

That is enough to show that the Amended Complaint violates the AIA. But the relief the Plaintiffs seek goes father still. The PropCo Plaintiffs—currently in the middle of Tax Court litigation—seek an "order requiring the IRS to return to Plaintiffs all documents and information obtained as a direct result of the filing of Forms 8886 and 8918." Am. Compl. ¶ 9 (emphasis added). While that relief is derivative of setting aside Notice 2017-10, and so blocked by the AIA for the reasons set out above, it highlights that the Amended Complaint seeks to impede the assessment of tax. Snatching away the evidence necessary to defend the IRS's positions in Tax Court would necessarily restrain the IRS's ability to assess the correct tax liability. Courts have repeatedly rejected suits that seek to prevent the IRS from considering certain evidence during an

audit. *See, e.g.*, *Gaetano v. United States*, 942 F.3d 727, 733 (6th Cir. 2019) (interview with the taxpayer's former attorney); *Lowrie v. United States*, 824 F.2d 827, 831 (10th Cir. 1987) (documents seized in an allegedly illegal search); *Dickens v. United States*, 671 F.2d 969, 970 (6th Cir. 1982) (information gathered through an FBI wiretap). In each case, the court concluded that, in the words of the Sixth Circuit, "the Anti-Injunction Act prohibits injunctions against IRS use of particular types of evidence in assessing or collecting taxes." *Dickens*, 671 F.3d at 971. The result is no different here, where Plaintiffs seek to enjoin the IRS from using the evidence in Tax Court.[4] Both types of relief sought by the Amended Complaint violate the AIA.

### B. The "ongoing economic harm" alleged by the PropCo Plaintiffs and Partner Plaintiffs shows that they are seeking to restrain assessment.

Taxes and penalties aren't the only types of harm Plaintiffs allege in the Amended Complaint. They also claim to be economically harmed because they have to "respon[d] to IRS examinations and Tax Court litigation that *directly resulted from the required reporting*." Amended Compl. ¶ 197 (emphasis added). Those costs only highlight that the AIA bars their claims.

The PropCo Plaintiffs' alleged costs of defending their positions in exam and bringing Tax Court litigation are derivative of, and inextricably linked to, tax adjustments determined by the IRS. *Compare CIC Services*, 141 S. Ct. at 1591 (affirmative reporting obligations would impose costs "separate and apart" from the statutory tax penalty) *with Hancock*, 2022 U.S. App. LEXIS 22850, at *5 (litigation costs were not "separate and apart" from tax penalty that may

---

[4] Along with violating the AIA, this requested relief conflicts with the APA's limitation on ordering agency action not otherwise required by law. There is no statute or regulation requiring the Service to return documents it obtains from taxpayers without receiving a request for that information, and thus the Court cannot compel the Service to do so. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014)

result from the FPAA). The connection between the harm alleged and the impending tax obligation for the PropCo Plaintiffs (and, in course, the Partner Plaintiffs) shows that the suit targets more than the tangential reporting requirement, and instead seeks relief from the tax consequences flowing from their participation in transactions identified by Notice 2017-10. Such relief "runs against" tax assessment and is barred by the AIA. *CIC Services*, 141 S. Ct. at 1590.[5]

### C.   The PropCo Plaintiffs and Partner Plaintiffs do not face criminal sanctions, and they have alternative forums to raise challenges to Notice 2017-10.

Unlike the challenger in *CIC Services*, the PropCo Plaintiffs and Partner Plaintiffs do not face collateral consequences flowing from Notice 2017-10 that necessitate a pre-enforcement challenge. Indeed, the PropCo Plaintiffs and Partner Plaintiffs have already complied with their reporting obligations resulting from the Notice, and thus do not face the risk of criminal sanctions for failing to do so. Because none of the Plaintiffs allege that they will engage in these transactions in the future, the Notice does not coerce any additional action by the PropCo Plaintiffs or Partner Plaintiffs at this stage.

Further, the pending Tax Court proceedings involving the PropCo Plaintiffs provide an adequate alternative remedy, as the PropCo Plaintiffs can use those proceedings to raise the same argument present here. *See Brown v. Massachusetts*, 487 U.S. 879, 903 (1988) (The APA does not provide "additional judicial remedies" when Congress has provided "special and adequate review procedures."). The Tax Court can determine whether the IRS has complied with the appropriate procedural requirements where, as here, the taxpayer argues that those requirements are a prerequisite to the imposition of liability. Indeed, other taxpayers have done precisely that

---

[5] Plaintiffs also claim that they are harmed by ongoing reporting requirements. Am. Compl. ¶ 197. But as discussed above, they have not alleged facts sufficient to show they have future reporting obligations. *See* Section I.

in parallel circumstances. *See Green Valley Investors, LLC v. Commissioner*, 159 T.C. No. 5, 2022 U.S. Tax Ct. LEXIS 643 (rejecting IRS's assertion of section 6662A penalties after finding that Notice 2017-10 had to be issued following notice-and-comment procedures). Thus, injunctive relief is not necessary and is barred by the AIA.

**III.**   **The statute of limitations bars Plaintiffs' challenges to Notice 2017-10 in Count One and Count Two.**

In any event, the statute of limitations bars Plaintiffs' facial challenges to Notice 2017-10 because they come more than six years after the IRS issued the Notice. The IRS published Notice 2017-10 in the Internal Revenue Bulletin on January 23, 2017. Plaintiffs filed this suit on March 9, 2023. Plaintiffs could have sued earlier, but they did not. Now it is too late.

Under 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The six-year statute of limitations for civil actions in section 2401(a) applies to APA claims, and that statute begins to run for facial challenges when the agency issues the final action that gives rise to the claim. *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 129 (11th Cir. 2015). A plaintiff cannot extend the limitations period by arguing that its procedural or policy challenge accrued when the agency applied the rule to the plaintiff. *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1366 (9th Cir. 1990). The six-year time limit is a condition of the United States' waiver of sovereign immunity, so it must be strictly construed in the government's favor. *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331 (11th Cir. 2006) (per curiam).

The question is when the right of action accrues. In *Wind River*, the Ninth Circuit explained that the accrual date is determined by the type of challenge. *See Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). First, it held that a challenge based on either a "mere procedural violation" or on policy grounds must be brought within six years of the

agency's original action. *Id.* It stressed that the basis for bringing procedural and policy challenges "will usually be apparent to any interested citizen within a six-year period following promulgation of the decision." *Id*. By contrast, "substantive challenge[s] to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of the disputed decision to the challenger" regardless of when the agency made the decision. *Id*.

The *Wind River* framework has been explicitly adopted by the First, Second, Fourth, Fifth, Sixth, and Federal Circuits. *See Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017); *Wong v. Doar*, 571 F.3d 247, 263 (2d Cir. 2009); *Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Dunn-McCampbell Royalty Interest v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997); *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1306-1307 (Fed. Cir. 2008). It has also been applied by courts within the 11th Circuit. *See Alabama v. Shalala*, 124 F. Supp. 2d 1250, 1270 (M.D. Ala. 2010). This Court should apply it too: the six-year limit serves important interests of finality and repose. *Wind River*, 946 F.2d at 715 ("The government's interest in finality outweighs a latecomer's desire to protest the agency's action as a matter of policy or procedure.").

Applying the *Wind River* framework to this case, Count One and Count Two are untimely because they consist of procedural and facial challenges to Notice 2017-10, which are subject to the six-year statute of limitations under section 2401(a).

### A.  Count One's procedural challenges are time-barred by section 2401(a).

Count One of the Amended Complaint alleges the IRS violated the APA's notice-and-comment rulemaking requirement. Am. Compl. ¶¶ 154-153. When a plaintiff's challenge is based on an agency's failure to observe notice-and-comment rulemaking procedures under the APA, courts applying the *Wind River* framework have consistently held that such challenges are procedural, and the right of action accrues on the date the agency publishes the rule. *See*

*Preminger*, 517 F.3d at 1269. In March, a district court in the District of Arizona considered a similar challenge to different IRS listing notice, Notice 2007-83, on grounds that the IRS issued the notice without notice-and-comment procedures. *Govig & Assocs. v. United States*, 2023 U.S. Dist. LEXIS 49700, at *1 (D. Ariz., Mar. 22, 2023). There, the Court found that the plaintiff's notice-and-comment challenge under the APA was a procedural challenge to the way the Notice was adopted, and it dismissed the claim as untimely. *Id.* at *41.

Like the challenge in *Govig*, Count One presents a solely procedural attack on Notice 2017-10. The right of action on this claim thus first accrued on the date the IRS published Notice 2017-10. Therefore, Count One is time-barred by section 2401(a), and should be dismissed as to all Plaintiffs. *JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) ("[T]he failure to provide notice and comment is a ground for complaint that is or should be fully known to all interested parties at the time the rules are promulgated.").

## B. Count Two is time-barred by section 2401(a) because it consists of policy-based facial challenges to Notice 2017-10

In Count Two, Plaintiffs allege that Notice 2017-10 violates the APA's prohibition on agency action that is arbitrary, capricious, an abuse of discretion, or unlawful. In particular, Plaintiffs allege in paragraph 178 of the Amended Complaint that Notice 2017-10 violates the statutory requirement under IRC section 6707A(c)(1) that reportable transactions be identified "under regulations." That is a facial procedural claim and barred by section 2401(a). *See Preminger*, 517 F.3d at 1269l; *Govig*, 2023 U.S. Dist., at *1.

The other claims in Count Two present facial policy challenges to the content and promulgation of the Notice. Facial challenges are "pure questions of law" that "directly challeng[e] the legal validity" of the agency action. *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 266 F. Supp. 2d 1101, 1121 (N.D. Cal. 2003). These types of challenges to the Notice *itself* are

subject to the six-year statute of limitations because they don't concern the agency's "substantive application" of the rule—instead, they pertain to the issuance of the Notice as a final agency action. *See Florida Keys Citizens Coalition v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998) (plaintiffs' challenge to a permitting regulation was time-barred because plaintiffs failed to show "substantive application" to the plaintiffs within six years). To depart from the statute accruing upon publication, the plaintiff's challenge must be specific to *how* the agency applied a rule in its particular case. For example, in *Dunn-McCampbell Royalty Interest v. National Park Service*, several mineral companies challenged the National Park Service's oil and gas rights regulations, which required, among other things, developers to submit a plan of operations for approval before extracting subsurface minerals. 112 F.3d 1283, 1287 (5th Cir. 1997). The 5th Circuit held that the statute of limitations barred the plaintiffs' claims because plaintiffs did not show "direct, final agency action" involving the particular plaintiffs to sustain the claims. *Id*. Similarly, in *North Dakota Retail Association v. Board of Governors of the Federal Reserve System*, for example, a group of merchants alleged that the Board's issuance of a regulation setting a maximum interchange fee was arbitrary and capricious under the APA. 55 F.4th 634, 641 (8th Cir. 2022). The 8th Circuit held that because the plaintiffs sought to invalidate the text of the regulation in "all applications," its challenge was facial and must be brought within the six-year statute of limitations. *Id*.

Here, Plaintiffs argue that Notice 2017-10 *itself* is arbitrary and capricious. Plaintiffs allege in paragraphs 180 through 182 and 184 that Notice 2017-10 is invalid because it does not include discussion or examination of relevant facts and data. In paragraphs 179 and 183, they claim the Notice is too vague. Plaintiffs allege in paragraph 185 that Notice 2017-10 is invalid because it improperly imposes a retroactive reporting obligation without analysis or explanation.

In paragraph 186, Plaintiffs contend that Notice 2017-10 is invalid because it lacks evidence or analysis of the need for it. None of these allegations concern the substantive application of Notice 2017-10 to Plaintiffs. Plaintiffs have not claimed, for example, that there is any ambiguity about whether the promotional materials in transactions in which they participated and on which they advised fall within Notice 2017-10. Similarly, Plaintiffs have not alleged impermissible ambiguity as to whether the promotional materials for Plaintiffs' transactions fall within Notice 2017-10.

Every fault Plaintiffs allege in Count Two exists on the face of Notice 2017-10. Because these challenges are to "all applications" of the Notice, they are untimely facial attacks. *N. Dakota Retail Assoc.*, 55 F.4th at 641; *see also Colo. Right to Life Comm. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007) ("A facial challenge considers [a regulation's] application to all conceivable parties, while an as-applied challenge tests the application of that [regulation] to the facts of a plaintiff's concrete case."). These alleged flaws in the Notice have been present since its issuance, and they could have been challenged in a timely suit. Considering the last transactions reported by the Plaintiffs took place in 2019, Plaintiffs' reporting obligations would have occurred no later than 2020. Thus, Plaintiffs could have brought their suit earlier, but did not. Thus, Plaintiffs cannot now circumvent the statute of limitations in section 2401(a), and Count Two should be dismissed as to all Plaintiffs.

## **CONCLUSION**

The Court should dismiss the PropCo and Partner Plaintiffs under rule 12(b)(1) because they lack standing and because the AIA bars the Court's jurisdiction over their claims. The Court should also dismiss Counts One and Two under Rule 12(b)(6) as to all Plaintiffs because those claims are time-barred.

## <u>CERTIFICATION OF CONFERRAL</u>

The United States has conferred with opposing counsel but was unable to reach an

agreement on the relief requested, or amending the complaint.

## <u>REQUEST FOR ORAL ARGUMENTS</u>

The United States respectfully requests that the Court hold oral arguments on the issues

raised in this motion.

Dated: July 14, 2023                                        Respectfully submitted,

                                                            DAVID A. HUBBERT
                                                            Deputy Assistant Attorney General

                                                            <u>*/s/ Daniel B. Causey, IV*</u>
                                                            DANIEL B. CAUSEY, IV
                                                            Trial Attorney, Tax Division
                                                            U.S. Department of Justice
                                                            P.O. Box 14198
                                                            Washington, D.C. 20044
                                                            202-307-1427 (v)
                                                            202-514-4963 (f)
                                                            Daniel.B.Causey@usdoj.gov

                                                            OF COUNSEL:

                                                            PRIM F. ESCALONA
                                                            United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I served this document on Plaintiff's counsel by electronically filing it with the Clerk of Court using the CM/ECF system.

*/s/ Daniel B. Causey, IV*
DANIEL B. CAUSEY, IV
Trial Attorney
DOJ Tax Division
